427 So.2d 83 (1983)
Ora Lewis MARTIN
v.
ORLEANS PARISH SCHOOL BOARD.
No. CA 0141.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1983.
Gertler & Gertler, Harry E. Forst, New Orleans, for plaintiff-appellee.
Jefferson, Bryan & Gray, Clare Jupiter, New Orleans, for defendant-appellant.
Before BARRY, KLEES and CIACCIO, JJ.
*84 CIACCIO, Judge.
This is an action to recover disability benefits under the Louisiana Workmen's Compensation Act. R.S. 23:1021 et seq. After a trial on the merits, the district court awarded the plaintiff compensation benefits for partial disability, commencing with the date of the accident, for a period not to exceed a total of 450 weeks. The defendant appeals the judgment, alleging the plaintiff's failure to prove that the work-related accident caused her disability. The plaintiff answers the appeal, alleging the errors of the trial court in failing to find that the plaintiff was totally and permanently disabled and in refusing to award attorney fees and penalties. We affirm the judgment of the district court.
The issues presented are: Did the plaintiff prove that her disability resulted from her work-related accident?; Did the trial court err in finding that the plaintiff sustained permanent partial disability?; and, Did the trial court err in refusing to award the plaintiff attorney fees and penalties?
The undisputed facts are as follows:
The plaintiff, Ora Lewis Martin, is a sixty-three (63) year old teacher who has been employed for twenty-five (25) years with the defendant, Orleans Parish School Board. Mrs. Martin holds a bachelors degree in education and a masters degree in guidance and counseling. She has certification to teach five (5) subjects.
On the date of the accident, October 2, 1979, the plaintiff was employed by the defendant as an English teacher at Fortier High School in New Orleans. Pursuant to instructions given to the staff and student body, Mrs. Martin and her class proceeded to the gymnasium for an assembly program. Upon arriving at the gymnasium, the plaintiff instructed her class to be seated in the bleachers. The plaintiff noticed that there was some dissension among a group of students gathered by the gymnasium door nearest Joseph Street. Shortly thereafter, a student attempted to alert her to a large group of students moving towards her. As Mrs. Martin looked up she was struck and knocked to the ground by the group of students who were rushing past her from the Freret Street side of the gym. The group of students moved across the plaintiff as she attempted on several occasions to stand up. She was finally able to crawl on her stomach, with her hands over her head, to the bleachers area. She was able to place her head under the last step of the bleachers until the group had passed.
Several teachers and a school nurse came to the plaintiff's aid. She indicated to them that her neck and back were hurt. An ambulance was called and the plaintiff was taken to Ochsner Hospital for treatment. The plaintiff was x-rayed and the results indicated that she had sustained a severe cervical and lumbar strain. She was administered heat treatment and medication and a cervical collar was prescribed.
The plaintiff was seen by Dr. A.M. Cotlar, a surgeon, on four (4) occasions in October and November, 1979. She was given diathermy treatments. She was then advised to see an orthopedist.
She was first treated by Dr. Kenneth Veca, an orthopedist, on October 8, 1979 at the Methodist Hospital Emergency Room. He diagnosed her condition as cervical and lumbosacral strain superimposed on degenerative changes. He found the plaintiff to be overweight which resulted in lordosis and the overweight condition aggravated the plaintiff's back problem. He noted degeneration in the lumbosacral spine and changes in the disc space between C5 through C7, but especially in the area of C5-6. Dr. Veca next saw the plaintiff on February 22, 1980. He found the plaintiff had a good range of motion on forward bending. She complained of low back pain without radiation, which indicated that there was no nerve root damage involved. She was wearing a soft collar at the time.
On March 7, 1980 plaintiff again visited Dr. Veca. Plaintiff, for the first time, complained of low back pain which radiated into the hip and thigh. X-rays taken of the plaintiff indicated degenerative changes in the neck and back. Plaintiff was taken off *85 of Naprosyn and was told to take Clinoril 150 mg, to be taken three times daily.
Plaintiff visited Dr. Veca for the final time on April 11, 1980. Although she complained of daily discomfort, she had full range of motion in her back and neck. Dr. Veca stated that he could not account for her symptomalogy. It was his opinion that the plaintiff could return to work, thus he released her from his care.
The plaintiff first visited Dr. Kenneth Adatto, an orthopedist, on May 6, 1980. The plaintiff complained of pain in her neck and back and she stated that no such problems existed before the accident. Spasms were found in the cervical and lumbar areas. The x-rays revealed degenerative arthritic changes and a narrowing of C5-6 and C6-7 with spur formation. Antiarthritic compounds were prescribed. She was treated by Dr. Adatto in June, 1980, January, April, May and September, 1981. In April, 1981 plaintiff was referred for an electromyogram (EMG) and a nerve conduction study. Dr. Adatto's diagnosis was that the plaintiff had degenerative arthritis of the spine which was aggravated by the trauma she sustained on the date of the accident. He did not discharge the plaintiff because of her arthritic condition. He stated that it was his opinion that if, as an English teacher, Mrs. Martin had to stoop, bend or lift objects over 25 to 50 pounds, that she could not work.
Dr. William A. Martin is a neurologist who did not examine the plaintiff but gave his opinion of the plaintiff's condition based upon a reading of some of her medical reports and the diagnostic reports of the EMG and the nerve conduction study. He stated that since the plaintiff's back appeared to be improving at the time the electrodiagnostic test was administered, that he did not know why the test was ordered. An electromyogram (EMG) is a test used to study a patient's muscles, while a nerve conduction velocity test determines whether the patient's nerves are functioning normally. Dr. Martin looked upon these test results as being equivocal because they were not supported by the patient's history nor the neurological and orthopedic examination results. Dr. Martin felt that the patient did not have a disc problem but she did have evidence of degenerative spinal arthritis.

Causation
The defendant argues that the plaintiff failed to sustain her burden of proving a causal link between the back and neck pain and her work-related accident. It reasons that there is insufficient evidence to link the problems with the work-related accident because of the plaintiff's age, her obesity, her pre-existing arthritis and the passage of time.
In order to recover benefits under the Louisiana Workmen's Compensation Act, an employee must establish that he suffered a personal injury by accident arising out of and in the course of his employment. R.S. 23:1031. Simpson v. S.S. Kresge, 389 So.2d 65 (La.,1980). That is, disability is compensable if it results from a work-related accident. R.S. 23:1031. Simpson v. S.S. Kresge, Id. The plaintiff is entitled to compensation if due to his pre existing condition, the work-related accident causes his disability, even though it would not have resulted in a disability in a person without his condition. Allor v. Belden Corp., 393 So.2d 1233 (La., 1981).
The plaintiff must prove by a preponderance of the evidence the disability and causal relation of the disability to the work-related accident. Allor v. Belden Corp. supra. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La., 1980). The Louisiana Supreme Court, in the decision of Allor v. Belden Corporation, discussed the issue of proving the "causal connection between the accident and the disability":
On the specific issue of the causal connection between the accident and the disability, the claimant is entitled to the benefit of a presumption in certain cases. If an otherwise healthy worker suffers an accident at work and is thereafter disabled, it is presumed that there is a causal connection between the two, so long as the *86 medical evidence establishes a reasonable possibility of such a connection. See Cadiere v. West Gibson Products Co., Inc. 364 So.2d 998 (La.1978); Haughton v. Fireman's Fund American Ins. Cos., 355 So.2d 927 (La.1978); Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977); Bertrand v. Coal Operators Cas. Co., 253 La. 1115, 221 So.2d 816 (1969); Malone & Johnson, supra, § 259, p. 572-3. This presumption is not conclusive, but it forces the defendant to come forward with sufficient contrary evidence to rebut it. Supra, at 1236.
Mrs. Ora Martin complained of neck and back pain from the time of the accident, throughout her treatments with Dr. Cotlar, Dr. Veca and Dr. Adatto. Although her pain differed in intensity at times and occasionally could be felt more significantly in one area than another, the plaintiff continued to experience pain from the date of the accident through the time of trial.
Dr. Veca testified that the patient had told him she had no problems before the accident but problems after the accident. He stated that he could not dispute the fact that she was experiencing pain, but he could not account for its severity. He did concede however, that her degenerative condition would have something to do with this. Dr. Veca diagnosed the plaintiff's condition as being a cervical and lumbosacral strain which was superimposed on degenerative changes.
Dr. Adatto also indicated that the plaintiff related to him her accident of October 2, 1979 and stated that she had no prior problems with her back or neck. He noted in her x-rays that she had degenerative arthritis of the cervical and dorsolumbar spine. He diagnosed her condition as degenerative arthritis of the spine which was aggravated by the trauma she sustained on the date of the accident.
The evidence clearly establishes a presumption in the plaintiff's favor that the accident of October 2, 1979 had a causal connection to her disability. There was no countervailing evidence and thus the defendant failed to rebutt the presumption.
In the final analysis, it is the judge's responsibility in a workmen's compensation case to determine if and to what extent a plaintiff suffered a disabling injury which is compensable. Simpson v. S.S. Kresge Co., supra; Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300 (La.1979). Great weight is afforded the trial court's finding of a work-related disability. Simpson v. S.S. Kresge Co., supra; Crump v. Hartford Accident & Indemnity Co., supra. These findings will not be disturbed, unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
The trial court concluded that the plaintiff's disability was the result of her work related accident and the record clearly supports this finding. We find no error in this regard.

Disability
The plaintiff contends that the trial judge should have found her to be totally disabled.
An injured worker is considered totally and permanently disabled, under the provisions of the Louisiana Workmen's Compensation Statute, when he is unable to pursue any gainful employment without experiencing substantial pain. R.S. 23:1221(2). Kraemer v. La. Power & Light Co., 393 So.2d 346 (La.App., 1st Cir., 1980).
If a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled. R.S. 23:1221(3). Dusang v. Henry C. Beck Builders, supra.
The trial court found the plaintiff to be partially disabled and the record supports that finding.
Dr. Kenneth Veca felt that the plaintiff could return to work as of April 11, 1980.
Dr. Adatto felt that Mrs. Martin could return to work if, as an English teacher, she did not need to stoop, bend or lift objects over 25-50 pounds.
*87 Mrs. Martin testified that in her current job as an English teacher at Fortier High School she had to climb stairs to get to her classroom. She personally chose to arrange chairs between classes, walked around the room during class, distributed books from the locker before the class and she often wrote on the board in her capacity as a teacher. She stated that she had to be physically and mentally alert in order to handle her classes. She felt severely restricted in her activities after the accident.
A fellow teacher, Lemona Chandler, speculated that approximately 50-60% of the teacher's time was spent in bending and stooping. She felt that working in pain would adversely affect the teaching process as students are very aware of the teacher's attitude.
It is obvious from the record that Mrs. Martin could not return to her former duties as an English teacher at Fortier High School. However, we are not convinced that her disability was such as to obviate the pursuit of any gainful employment. She failed to prove that she was unable to pursue other gainful employment. This is especially true in view of her high degree of training and education. We find no error in the trial court's finding that the plaintiff is partially disabled.

Attorney Fees and Penalties
The plaintiff contends that the School Board's failure to continue compensation payments to the plaintiff was arbitrary and capricious, thus, attorney fees and penalties should have been assessed.
R.S. 23:1201.2 provides, in pertinent part: Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims.
. . . . .
In the instant case, the compensation provider ceased payments upon the professional advice of its attorney and medical director, after consideration of Dr. Veca's medical opinion that the plaintiff could return to work. Since a reasonable basis existed for the termination of benefits, the defendant's actions were neither arbitrary nor capricious. Attorney fees and penalties are not warranted.
For the reasons assigned, the judgment of the trial court is affirmed. Each party is to be bear his own cost of this appeal.
AFFIRMED.