HALL, Chief Judge
In this worker’s compensation action, defendants, S.T. Sibley, III Enterprises, Inc. d/b/a Kentucky Fried Chicken and Aetna Life and Casualty, appeal from the judgment of the district court finding plaintiff, Rita J. Jones, to be permanently and partially disabled as a result of a work-related accident and awarding plaintiff worker’s compensation benefits together with medical expenses. For the reasons expressed herein, the judgment of the district court awarding benefits for permanent partial disability is affirmed, and the case is remanded for a more specific determination of the medical expenses to be awarded. ASSIGNMENTS OF ERROR
On appeal, defendants-appellants assert the following assignments of error:
1. The district court erred in finding that plaintiff had incurred a permanent partial disability as a result of the work-related accident; and,
2. The district court erred in awarding certain medical expenses as plaintiff failed to meet her burden of proof that these expenses were related to the treatment of the condition resulting from the work-related accident.
FACTUAL BACKGROUND
Plaintiff instituted this action for worker’s compensation benefits on December 21, 1983 alleging that she was totally and permanently disabled as the result of an accident which occurred on October 22, 1982 while she was employed as a cook at the Kentucky Fried Chicken Restaurant in Mansfield, Louisiana and that she had been unable to work since the date of the injury. At the trial on the merits in March, 1985, it was stipulated that plaintiff had received worker’s compensation benefits from October 23, 1982 through December 27, 1982.
Plaintiff testified that on that the date of the accident as she was preparing to cook chicken gizzards, she slipped on grease and fell on the floor, striking her head, tailbone, and back. The floor was concrete, overlaid with cement tile. Plaintiff testified that immediately after the accident, she suffered from headaches, lower back pain, dizziness, and numbness in her legs. Plaintiff stated that because she was dizzy, her mother came to pick her up. Plaintiff went to the hospital for treatment approximately two days after the accident. Plaintiff stated that she continued to suffer from headaches, lower back pain, and occasional swelling and numbness in her legs, specifically her right leg, and had consulted with numerous physicians. Plaintiff stated that she was unable to bend over and to lift heavy objects. Plaintiff testified that she was physically unable to return to her former position as a cook as the job required the lifting of heavy objects. Plaintiff stated she was a high-school graduate and had acquired some clerk-typist skills from vocational training.
Plaintiff’s mother and three sisters testified that they had been assisting the plaintiff around the house with household chores and had helped to care for the plaintiff’s children since the date of the accident. The witnesses testified that they saw the plaintiff quite frequently after the accident to the date of the trial and that she continuously related suffering from physical discomfort, namely headaches, dizziness, lower back pain, and swelling in her legs.
Leola Myles, plaintiff’s next door neighbor, testified that she saw the plaintiff every day and often assisted plaintiff in household chores. Myles stated that plaintiff had suffered from various physical complaints following the accident and was unable to stand for a long period of time.
Percy Myles, plaintiff’s boyfriend and neighbor, testified that he saw the plaintiff every day and that plaintiff complained of *1078 suffering from headaches, dizziness, lower back pain, and swelling in her legs following the accident.
Dr. Carl Goodman, an orthopedic surgeon, testified by deposition that he first saw the plaintiff on October 28, 1982. Plaintiff related that she had suffered from a persistent headache, neck pain, dizziness, numbness in her right leg, and back pain and stated that she had failed to improve despite medication. On examination, Goodman found marked limitation of lumbar or lower back movements due to complaints of pain and generalized tenderness to light touch in the lumbar area. Goodman found no symptoms of nerve root irritation in plaintiffs arms or legs nor muscular spasms in the lumbar and cervical areas. Plaintiff’s head had a tender area with some swelling in the back and examination of plaintiff’s neck revealed a range of motion to be eighty percent of normal with complaints of pain at all extremes. Goodman noted a stocking-type loss of sensation in the right leg but the reflexes in both legs were equal and active and there was no weakness or atrophy. Goodman found no abnormalities in reviewing x-rays previously taken of plaintiff. Goodman’s impression was that plaintiff had sustained a head contusion and a cervical and lumbar strain and sprain. Goodman advised plaintiff to use heat and massage and to limit home activities. Goodman stated he expected the full recovery of plaintiff within the next two weeks following the examination without any permanent problem.
Goodman next saw the plaintiff on June 7, 1984 and his diagnosis at that time was unresolved cervical and lumbar strain and sprain and coccygodynia or painful tailbone. Goodman’s records indicated tenderness in the lower lumbar area and over the coccyx with a seventy-five percent limitation of lumbar movements. Goodman testified that injuries to the coccyx can occur frequently in falls and that it can take a long time to recover from such an injury. Goodman stated that there was no indication that plaintiff was faking her injury and that a coccyx injury could cause restricted activities and preclude someone from working. Goodman testified that while x-rays may be used as an indication of a coccyx injury and plaintiff’s x-rays were negative as to bone injury, it was not unusual for an injury to the coccyx to occur without any indication on x-rays. Further, Goodman testified that many of these injuries may produce no objective symptoms of injury yet the patients suffer over a long period of time. Goodman stated that his findings were based primarily on plaintiff’s subjective complaints rather than objective physical findings.
Dr. Jose Pineda, a family medicine physician, testified by deposition that he first saw plaintiff on December 9,1983. At that time, plaintiff was complaining of lower back pain, particularly in the tailbone area. Pineda’s initial diagnosis at that time was recurrent lower back sprain. Pineda performed a rectal examination and stated that plaintiff “jumped with pain” when he touched the rectal area. Pineda’s impression was that plaintiff may have had some kind of damage to the coccyx. Pineda formed a diagnosis of coccygodynia and stated there was no worse condition from which to recover. Pineda explained that coccygodynia is a pain in the lower end of the tailbone which usually occurs from trauma and may take years for recovery and that this condition could impair the ability to perform a job involving bending, lifting, and standing for a long period of time. Further, Pineda testified that it was not necessary to actually fracture the coccyx to have this condition and if fractured, the fracture may not appear immediately. Rather, the fracture may not show on x-rays until it calcifies in the healing process. Pineda stated that there was no indication that plaintiff was faking her injury. Pine-da gave plaintiff treatments for lower back pain and strain including massage, injections, and pain medication. Pineda testified he found objective signs of injury in plaintiff’s expressions of pain during his examination. Pineda testified that after treatments, plaintiff had substantial improvement in her condition and he released her on December 31, 1983. However, Pine- *1079 da stated that plaintiff had the recurrence of symptoms during cold weather changes. Pineda next saw the plaintiff on June.5, 1984 and plaintiff still complained of lower back pain with swelling of the feet and legs.
Dr. Donald Taylor, a general practice physician, testified by deposition on behalf of the defendants. Taylor testified he examined the plaintiff on October 27, 1982. At that time, plaintiff complained of suffering from pain in the back of the head, the right hip, and back area. Taylor’s findings were essentially normal and unremarkable with the exception of a small hematoma on the occipital portion of plaintiff’s head. Taylor’s diagnosis was a superficial bruise to the occipital area and muscle area of the back. Taylor could not find any positive physical findings compatible with plaintiff’s complaints of the amount of pain she suffered and felt that the plaintiff was exaggerating. Plaintiff’s x-rays of the skull and lumbo-sacral area, which included the coccyx, were within normal limits with no evidence of fractures. Taylor placed plaintiff on light pain pills and a muscle relaxant. Taylor next saw the plaintiff on November 3, 1982 and she was still complaining of severe pain. Taylor stated that he felt at that time that plaintiff was malingering. Taylor instructed the plaintiff to gradually increase her activities and start walking again. Plaintiff returned again on November 8, 1982, still complaining of soreness in the back area, excruciating pain, and difficulty in walking. Taylor released plaintiff on that date and felt plaintiff continued to exaggerate her symptoms.
Dr. Roy Buey, a general surgeon and family practice physician, testified on behalf of the defendants. Buey first saw the. plaintiff on January 31, 1984 and plaintiff was complaining at that time of pain in the coccyx. Buey testified initially he -felt that there was possibly a fracture in the body of the coccyx without displacement and he placed her on anti-inflammatory medication. Buey had an x-ray taken of plaintiff and compared it to a previous x-ray taken at the time of injury and concluded there was no fracture of the coccyx. Buey stated there were no objective findings to indicate the cause of plaintiff’s complaints of pain and he did not see any basis for the diagnosis of coccygodynia. Buey did not see plaintiff again until January 29, 1985. At that time, plaintiff had a completely unrelated illness and did not complain of any other symptoms.
Plaintiff was seen and treated by several physicians other than the four whose testimony was offered at trial. The other physicians were not called as witnesses by either the plaintiff or the defendants.
The district court reviewed the conflicting medical evidence and noted that there were two physicians who concluded that plaintiff was either a malingerer or not injured and two physicians who concluded that plaintiff was not trying to deceive them and that the injury was one which often had no objective or recognizable manifestations. In other words, the injury and resulting pain could be real with no supporting evidence other than the patient’s subjective complaints. The district court further noted the testimony of the lay witnesses, particularly that of Leola Myles, that plaintiff had continuously complained of pain in her legs and back along with headaches following her injury. The court found that in light of the totality of the medical evidence, together with the apparent subjective nature of the type of injury and the testimony of the lay witnesses, that the plaintiff was permanently and partially disabled to a degree as to render her unable to perform duties of employment similar to those in which she was customarily engaged when injured or duties of the same or similar character, nature, or description for which she was fitted by education, training, or experience. The court awarded plaintiff worker’s compensation benefits at the rate of 66⅜ per cent of the difference between her wages at the time of her injury and any wages earned following said injury for as long as plaintiff remained partially disabled but not to exceed 450 weeks, together with all medical *1080 charges incurred from and related to the accident.
DISABILITY OF PLAINTIFF
It is well-settled that all of the provisions of the worker’s compensation statute are to be liberally construed in favor of the claimants. Glover v. Southern Pipe & Supply Co., 408 So.2d 352 (La.App. 4th Cir.1981), writ denied, 412 So.2d 86 (La.1982). In a case for compensation benefits, the trial court has the responsibility of determining whether or not a plaintiff is disabled. Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984). Under the former worker’s compensation law which was in effect at the time of the plaintiff’s injury and thus applicable, the claimant has the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App.2d Cir.1984); Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La.App.2d Cir.1984); Attaway v. Farley’s Glass Co., Inc., 430 So.2d 705 (La.App.2d Cir.1983); Westley v. Pressure Services, Inc., 452 So.2d 354 (La.App. 1st Cir.1984); Daney v. Argonaut Ins. Co., 421 So.2d 331 (La.App.1st Cir.1982); Latiolais v. Home Ins. Co., 454 So.2d 902 (La.App.3d Cir.1984), writ denied, 460 So.2d 610 (La.1984); Thomas v. Gregory & Cook, Inc., 445 So.2d 1258 (La.App.3d Cir.1984); Martin v. Orleans Parish School Bd., 427 So.2d 83 (La.App.4th Cir.1983), and numerous citations therein. Disability is a legal rather than purely medical determination within the framework of the worker’s compensation law. Calhoun v. Fireman’s Fund Ins. Companies, 437 So.2d 900 (La.App.2d Cir.1983). The issue of whether or not a claimant has met his burden of proof must be determined by examining the totality of the evidence which includes both lay and medical testimony. Harrison v. Chicago Mill & Lumber Co., supra; Attaway v. Farley’s Glass Co., Inc., supra; Henson v. Handee Corp., 421 So.2d 1134 (La.App.2d Cir.1982); Westley v. Pressure Services, Inc., supra; Daney v. Argonaut Ins. Co., supra; Latiolais v. Home Ins. Co., supra; Glover v. Southern Pipe & Supply Co., supra; Guerrero v. Tico, 436 So.2d 1237 (La.App.5th Cir.1983), and citations therein. The trial court is in the best position to evaluate the credibility of the claimant and to reach a factual conclusion based upon all of the evidence and it is the court's function to determine the weight which is to be accorded to both the lay and medical testimony. See Westley v. Pressure Services, Inc., supra; Pendleton v. Spartan Bldg. Const., 432 So.2d 298 (La.App.5th Cir.1983), and citations therein. Because of the superior capacity of the trial court to evaluate live witnesses, the standard of appellate review requires that great weight be given to the trial court’s factual findings of a work-related disability and they will not be disturbed unless clearly wrong. Culp v. Belden Corp., 432 So.2d 847 (La.1983); Westley v. Pressure Services, Inc., supra; Latiolais v. Home Ins. Co., supra; Carter v. Pitt Grill, Inc., 425 So.2d 375 (La.App.3d Cir.1982); Martin v. Orleans Parish School Bd., supra; Guerrero v. Tico, supra, and citations therein. The inability of a claimant to work and working in pain are questions of fact. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979). In evaluating the evidence, the trial court may accept or reject an opinion expressed by a medical expert, depending on what impression the qualifications, credibility, and the testimony of the expert makes on the court, Westley v. Pressure Services, Inc., supra, and the opinion of a physician or other medical expert as to disability does not necessarily determine legal disability, Johnson v. Ins. Co. of N. America, supra. The proof of a disability caused by subjective pain largely depends on the trial court’s evaluation of the credibility of the claimant in light of the medical testimony as the plaintiff is the only one really capable of describing his pain. Jacobs v. Pik-Quick, Inc., 454 So.2d 303 (La.App.4th Cir.1984). As noted in Harrison v. Chicago Mill & Lumber Co., supra, the appellate courts in this state are reluctant to brand a claimant who has been held to be disabled as a malingerer and will not do so unless the findings of the trial court are *1081 manifestly erroneous. A claimant will be found to be partially disabled if he is unable to perform the same work that he did before the injury because of substantial pain but has the mental capacity and physical capability to perform the jobs which are available. See Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Reynolds v. Wal Mart Stores, Inc., supra; Attaway v. Farley’s Glass Co., Inc., supra; Scott v. Sears, Roebuck & Co., 406 So.2d 701 (La.App.2d Cir.1981); Carter v. Pitt Grill, Inc., supra; Harrington v. Starline, Inc., 425 So.2d 307 (La.App.3d Cir.1982); Ramsey v. Dragon Ltd., 448 So.2d 745 (La.App.4th Cir.1984); Martin v. Orleans Parish School Bd., supra, and numerous citations therein.
While defendants do not apparently dispute the occurrence of a work-related accident, they argue that the plaintiff was not permanently and partially disabled as a result of the work-related accident.
Although there was medical evidence which contradicted plaintiff’s claim of a disability, reviewing the record as a whole it does not appear that the trial court was clearly wrong in finding that the plaintiff did suffer from a permanent and partial disability. Dr. Goodman and Dr. Pine-da were both of the opinion that plaintiff was suffering from an injury to the coccyx which was disabling and that it would take” a long period of time for the symptoms to resolve themselves. The testimony indicated that this type of injury may not produce any objective signs of injury and is. often evidenced only by the subjective complaints of pain expressed by the patient. Therefore, the lack of objective signs of injury by the plaintiff is not inconsistent with this type of injury. The testimony of these physicians was further supported by plaintiff’s own testimony and that of the lay witnesses who saw plaintiff quite frequently following the accident to the date of trial. The testimony established that plaintiff’s symptoms had manifested themselves following the accident and plaintiff had consistently complained of pain since the date of the accident and often needed assistance in performing simple household chores. The combined testimony of the physicians, Goodman and Pineda, and that of the lay witnesses established by a preponderance of the evidence that plaintiff was disabled. Although the testimony of Dr. Buey and Dr. Taylor, which indicated that plaintiff was not disabled, raised a genuine issue as to the disability of the plaintiff, it is not sufficient to overcome the evidence presented by plaintiff. Further, because the finding of disability was based in part on the subjective complaints of the plaintiff, it necessarily required the evaluation of the credibility of the witnesses by the trial court. Based upon the record before us, the evaluation of the district court was reasonable and its findings will not be disturbed by this court on appeal.
PLAINTIFF’S MEDICAL EXPENSES
Defendants argue that plaintiff failed to meet her burden of proof that certain medical expenses were incurred from or related to the treatment of her injury and resulting condition.
The medical expenses in dispute appear to be as follows:
Southpark Hospital $1,607.15
Warrington Plaza Physical Therapy 100.00
Schumpert Medical Center 3,852.80
Drs. Carroll, Carlisle, Marshall Williams, and Peavy 270.00
Dr. Phillip Osborne, Shreveport Pain and Rehabilitation Center, Inc. 697.50
Dr. David Cooksey 70.01
Nabil A. Moufarrej 130.00
The medical expenses incurred from treatment by Dr. Pineda in the amount of $805.00 do not appear to be in dispute and were satisfactorily proven at trial.
The judgment does not specifically list the medical expenses awarded, but it appears from the reasons for judgment that the district court intended to award plaintiff all of the above medical expenses. However, a review of the record reveals that there was not sufficient evidence that these medical expenses were reasonably related to plaintiff’s injury and were necessary for the treatment of plaintiff’s condi *1082 tion. Rather, plaintiff generally testified that the above medical expenses were incurred by her in relation to her condition resulting from the work-related accident. However, plaintiff did not testify as to the nature of the services rendered, the reason such services were necessary and the relation of such services to the injury. With regard to the hospital bills, there was no testimony whatsoever as to the identity of the admitting physician, the physician’s recommendation that hospitalization was necessary or even the dates of such hospitalization and the services rendered therein. There was no evidence as to the nature of the services rendered by the physicians or the dates such services were rendered. Finally, with regard to the statement from Warrington Plaza Physical Therapy, there was no evidence as to which physician prescribed such physical therapy, the reason such therapy was necessary and the relationship between such therapy and the plaintiff's condition.
As stated in Sewell v. Argonaut Southwest Ins. Co., 362 So.2d 758 (La.1978), the claimant in a worker’s compensation action is obliged to prove with specific evidence the actual medical services which were rendered as a consequence of the injury.
The defendants did not object to the admission into evidence of the medical bills as identified by plaintiff, but did not admit their relationship to plaintiff’s work-related injury. No evidence was offered to contradict the plaintiff’s testimony concerning the bills.
Given the insufficiency of the evidence and the vagueness of the judgment awarding medical expenses, we deem it appropriate in the interest of justice to remand the case for additional evidence and a more specific determination of the award for medical expenses.
For these reasons, the judgment of the district court in favor of plaintiff, Rita J. Jones, and against defendant, S.T. Sibley, III Enterprises, Inc. d/b/a Kentucky Fried Chicken and Aetna Life and Casualty, awarding worker’s compensation benefits for permanent partial disability is affirmed. The case is remanded for additional evidence and a more specific determination of the medical expenses to be awarded. Costs of this appeal are assessed to the defendants.
AFFIRMED, AND REMANDED.