544 So.2d 100 (1989)
Eugene GUIDRY, Sr., Plaintiff-Appellant,
v.
UNITED FURNITURE DISTRIBUTORS, INC., d/b/a United Discount Furniture, Defendant-Appellee.
No. 88-201.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*101 Gray, Spruel & Burks, Alcide J. Gray, Lake Charles, for plaintiff-appellant.
*102 McLeod, Little, Hopkins & Lloyd, Wm. L. McLeod, Jr., Lake Charles, for defendantappellee.
Before GUIDRY, DOUCET, and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, Eugene Guidry, filed this suit against his former employer, United Furniture Distributors, Inc., d/b/a United Discount Furniture (United)[1], seeking worker's compensation benefits, medical expenses, statutory penalties, attorney's fees, legal interest, and court costs for a back injury he sustained while working as a laborer. The trial court found plaintiff to be temporarily totally disabled from November 4, 1986, until December 10, 1986. Plaintiff was awarded temporary total benefits for four weeks at $127.00 per week plus one day at $25.00. Defendant was also ordered to pay all related medical expenses from those dates as well as all costs and legal interest from the date of the accident. Plaintiff appeals this ruling. We affirm.

FACTS
Plaintiff was employed by United as a laborer. He was apparently injured on November 4, 1986, while loading heavy furniture onto a dolly. Three physicians examined the plaintiff after his injury. Plaintiff first saw his family doctor, Dr. Melvin Morris, but did not call Dr. Morris to testify on his behalf. Plaintiff then saw Dr. Clark Gunderson, an orthopedic surgeon, on December 10, 1986. He complained of a sharp pain in his lower back which radiated down his left leg to his knee with numbness in his thigh. He walked stooped over with a crouched gait. Dr. Gunderson's first examination revealed that plaintiff had a lumbar spasm. He inferred that plaintiff probably suffered a back strain aggravated by a pre-existing degenerative lumbar disc disease. Dr. Gunderson referred plaintiff for physical therapy and prescribed codeine, an anti-inflamatory agent and muscle relaxant. Plaintiff saw Dr. Gunderson again on January 2, 1987. He still complained of pain to his lower back and of his inability to move about easily. Dr. Gunderson admitted plaintiff to Lake Charles Memorial Hospital where several tests were performed, including a myelogram and a CAT scan. The results of these primary tests were completely normal except for the CAT scan which showed a lateral bulging of the L4-5 disc. Because of this finding, Dr. Gunderson recommended an EMG. This test also produced normal results. Dr. Gunderson advised plaintiff that surgery was not indicated at this point and he recommended physical therapy. Plaintiff stayed in the hospital from January 6, 1987, until January 22, 1987.
Dr. Gunderson saw plaintiff on several occasions subsequent to his hospitalization. In February, 1987, plaintiff still complained of back and leg pain, and Dr. Gunderson suggested that plaintiff get a discogram. However, this test was never performed as the insurance company refused to pay the bill. Plaintiff returned in May of 1987 with the same complaints and Dr. Gunderson ordered a Magnetic Resonance Test. He also referred plaintiff to Dr. William Franklin Foster, a neurosurgeon, for a second opinion. Dr. Foster saw the plaintiff on May 6, 1987, and could find no objective symptoms of plaintiff's problems. In fact, Dr. Foster's examination revealed "numerous neurological inconsistencies." When asked at trial to detail some of the "inconsistencies," Dr. Foster responded as follows:
"I felt that he was extremely overreactive to the examination. In other words, each and every time that I would touch him he would jump or complain of excruciating pain when there was no specific anatomical explanation for that, sir. He stated that he could not flex or bend forward while standing, not even five degrees, not even a bit, because of the pain. Yet, I could sit him on the table and flex him up to 90 degrees, without him being aware of it, of course. This is *103 very inconsistent. These are two opposing findings you might say.
... There certainly was no evidence of muscle spasm. He had tenderness along the entire spinal column, from the base of his skull to the tip of his tail bone, and there's no injury that would present in that fashion that I've ever seen, out of literally thousands of neurological examinations. I've seen that type of problem before but never in an organic or objective portion of my exam.
He did have positive straight leg raising tests of 10 degrees bilaterally. Of course, this is inconsistent. I could sit him up to 90 degrees without pain, Yet, I could elevate the legs 10 degrees and he complained of excruciating pain. Of course, there's no stretch placed on the nerve roots or the sciatic nerve until the leg is elevated at least up to 30 to 35 degrees. So there's no reason for that to be a positive test. It's once again inconsistent with an objective finding."

* * * * * *
Q. "If he had been suffering from something like a herniated disc would there have been any evidence of atrophy?"
A. "Yes, sir. Or certainly hyper or hypotonia. He would have some muscle abnormality, as a rule."
Dr. Foster found no objective evidence of the plaintiff's complaints.[2] His examination did not show any atrophy or loss of muscle tone or strength whatsoever. Dr. Foster concluded that the plaintiff either had a severe emotional problem or was malingering. He wrote a report to Dr. Gunderson stating that plaintiff was "extremely overreactive to the point that I felt that he may have been less than candid."
Plaintiff saw Dr. Gunderson in June of 1987. Dr. Gunderson told plaintiff that he would not give him any more pain medication and advised plaintiff to see Dr. Shamieh, a neurologist. Plaintiff did not visit Dr. Shamieh, but returned to see Dr. Gunderson in July of 1987. His condition and findings were unchanged.
In addition to the medical evidence on this issue, there was lay testimony presented by plaintiff, plaintiff's wife, brother, and niece. Plaintiff testified that he continues to suffer debilitating pain in his lower back and leg. He further stated that he is unable to work at the present time because of his problems. Plaintiff's wife also testified that plaintiff is still disabled as a result of his injury. Plaintiff's brother and niece corroborated plaintiff's testimony that he sustained an injury in November 1986.

DISABILITY
On appeal, plaintiff contends that the trial court erred in finding him temporarily totally disabled from November 4, 1986, until December 10,1986 and in denying him medical expenses after December 10, 1986. Plaintiff argues that his disability lasted at least through July of 1987. He points out that Dr. Gunderson did not believe that plaintiff could return to work when he last examined him on July 14, 1987. Thus, plaintiff seeks a remand to secure additional medical information in order to determine the appropriate disability payments due.
The standard for appellate review of the trial court's factual findings of work-connected disability was set forth in Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300, 301 (La.1979):
"On appellate review, the trial court's factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is *104 of the opinion that other evaluations and inferences are as reasonable."
In order to recover worker's compensation benefits under Louisiana law, an employee must establish that he received a "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031. An injured employee is totally disabled, either permanently or temporarily, if he is unable to pursue any gainful employment without experiencing substantial pain. Belt v. State, Through La. Bd. of Cosmetology, 493 So.2d 278 (La.App. 3d Cir.), writ denied, 496 So.2d 1044 (La.1986). The claimant in a worker's compensation suit who alleges disability because of an inability to perform his normal or regular duties without substantial or appreciable pain must establish the existence of that condition to a reasonable certainty and by a fair preponderance of the testimony. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Clingan v. Doughty, 491 So.2d 469 (La. App. 3d Cir.1986).
Whether or not the plaintiff has met his burden of proof in a disability matter must be determined by examining the totality of the evidence including both medical and lay evidence. Tantillo v. Liberty Mutual Insurance Company, 315 So. 2d 743 (La.1975). In the instant case, the evidence as a whole was sufficient to establish the occurrence of a work-related accident for worker's compensation purposes. However, despite plaintiff's allegations of substantial pain, the trial court found that there was a lack of objective medical evidence to support a finding of total disability beyond December 10, 1986. After carefully reviewing the evidence, we conclude that the trial court did not abuse its discretion in making this finding. Plaintiff's testimony contained several discrepancies. For example, plaintiff initially testified that he was injured on November 11, 1986. However, during cross-examination when confronted with the payroll records, he acknowledged that the accident occurred on November 4, 1986. Plaintiff further testified that a co-worker suggested that the two men make furniture deliveries as this would involve less stress on plaintiff's back. This testimony was contradicted by the co-worker. Furthermore, the credibility of plaintiff's testimony concerning the extent and duration of his injury was cast into serious doubt by Dr. Foster. Also, Dr. Gunderson, who advised plaintiff not to return to work because of his subjective complaints, acknowledged the possibility that plaintiff may not have been candid with him during his examinations.[3] Thus, in the present case, we find no manifest error in the trial court's determination that plaintiff was temporarily totally disabled only until December 10, 1986.

PENALTIES AND ATTORNEY'S FEES
Plaintiff also contends that the trial court erred in not adjudicating the issue of penalties and attorney's fees. The trial court's judgment is silent with respect to plaintiff's demands for penalties and attorney's fees. Silence in this respect may be deemed to have been a rejection of this demand. Reed v. Lewing, 396 So.2d 1360 (La.App. 2d Cir. 1981). Accordingly, we address this aspect of the case as though the trial court specifically rejected these demands. Breaux v. National Union Fire Ins. Co., 527 So.2d 1207 (La.App. 3d Cir. 1988).
The award of statutory penalties in worker's compensation cases is governed by LSA-R.S. 23:1201 (B, E). LSA-R.S. 23:1201(B) provides that:
"B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid." *105 In order to avoid an award of penalties, the employer must demonstrate that non-payment resulted from conditions over which it or the insurer had no control, or that it or the insurer has reasonably controverted the right to benefits. LSA-R.S. 23:1201(E). The employee's right to such benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not due the employee. Chelette v. American Guarantee and Liability Insurance, Inc., 480 So. 2d 363 (La.App. 3d Cir.1985). Considering the closeness of the issues presented in this case, it is clear that defendant had a reasonable basis to refuse payment of compensation benefits to plaintiff. The evidence is contradictory regarding whether plaintiff told his employer that he had been hurt at work. Additionally, defendant contested plaintiff's claim that he suffered any injury arising out of the course of his employment on November 4, 1986. Although the trial court held that plaintiff was disabled from performing his work as a laborer until December 10, 1986, there was nevertheless a legitimate dispute on this issue. Thus, we conclude that the trial court did not err in failing to award plaintiff penalties.
We now turn to the issue of attorney's fees. Under LSA-R.S. 23:1201.2 the time period of payment of any claim due is established at 60 days after receipt of notice. Furthermore, before an employer or insurer can be found liable for attorney's fees, his failure to pay must be found to be arbitrary, capricious, or without probable cause. Considering the facts outlined above, we find that the defendant's actions in this case were not arbitrary and capricious. We therefore find no error in the trial court's denial of attorney's fees.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff.
AFFIRMED.
NOTES
[1] Plaintiff dismissed Louisiana Retailers' Self-Insurance Fund from the suit without prejudice.
[2] We note that Dr. Foster also testified that a mild bulging in the L4-5 disc (as indicated by plaintiffs CAT scan of January 1987) in a person over 35 years old is not abnormal. Plaintiff was 47 years old at the time.
[3] We also note that plaintiff did not call his family doctor, Dr. Morris, to testify at trial. The rule of evidence is that when the plaintiff is unable to provide a sufficient explanation as to why a treating physician's testimony is not introduced, it is presumed that such testimony would be adverse to plaintiffs cause. Chatelain v. United States Fid. & Guar. Co., 495 So.2d 379 (La.App. 3d Cir.), writ denied, 498 So.2d 756 (La.1986). Plaintiffs attorney merely stated at trial that Dr. Morris did not respond to a subpoena or subpoena duces tecum.