573 So.2d 591 (1991)
Roosevelt NELSON, Plaintiff-Appellant,
v.
ROADWAY EXPRESS, INC., Defendant-Appellee.
No. 22040-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
Writ Granted April 5, 1991.
Lawrence K. McCollum, for plaintiff-appellant, Roosevelt Nelson.
Lunn, Irion, Johnson, Salley & Carlisle by Brian L. Coody, Frank M. Walker, Jr., *592 for defendant-appellee, Roadway Express, Inc.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
SEXTON, Judge.
The plaintiff, Roosevelt Nelson, appeals the trial court judgment which denied his claim for worker's compensation benefits, penalties, and attorney fees. The trial court found that plaintiff had failed to prove his injuries were caused by an accident while he was at work for the defendant, Roadway Express, Inc. We affirm.
The plaintiff was 53 years old at the time of trial. He had been employed by Roadway for approximately 14 years on the date of the alleged accident, February 27, 1987. Since that date, the plaintiff has been unable to return to his duties as a dock checker at Roadway, loading and unloading freight from trailers, due to an injury to his back. The only disputed issue is whether plaintiff's back injury resulted from an accident while he was at work for Roadway. The trial court found that plaintiff had failed to prove his injuries were related to an accident on the job, specifically finding the plaintiff to be lacking in credibility. On appeal, the plaintiff urges that the trial court's finding is manifestly erroneous.
At trial, the plaintiff gave the following testimony regarding the cause of his back injury. On February 27, between 9:00 and 9:15 p.m., shortly before the end of his shift at 9:30 p.m., the plaintiff was unloading boxes from a trailer. The plaintiff described the boxes as similar to those containing Jim Dandy swing sets. The plaintiff specifically testified that he had unloaded 11 of these boxes, when he reached to get the 12th box, which was located on top of several other boxes. As he attempted to remove this box, it began to slip. When the plaintiff reached up to catch the falling box, he felt a "hard sting" in his back.
According to the plaintiff, a moment later, Wilmer Lee "Buddy" Capps, a terminal operations manager at Roadway and the plaintiff's shift supervisor on the date in question, was walking by the trailer where plaintiff testified he was injured. The plaintiff called out to Mr. Capps, but the plaintiff was unsure whether Mr. Capps either did not hear him or simply ignored him. In either case, Mr. Capps continued toward his office. Upon reaching the office, Mr. Capps called and requested that plaintiff join him there. His pain having eased, the plaintiff went to Mr. Capps' office where plaintiff claimed he told or attempted to tell Mr. Capps he had been injured, but Mr. Capps was apparently too busy to discuss it.
In the office, Mr. Capps gave the plaintiff three disciplinary or warning letters.[1] The plaintiff disputed being guilty of the infractions detailed in the disciplinary letters; therefore, pursuant to Roadway policy, he did not sign the letters. Ultimately, his fellow dock worker and union steward, Ron Woodward, was called to the office to ascertain that plaintiff understood the nature of, and still refused to sign the disciplinary letters, and to sign for him. This, too, was in accordance with company policy.[2]
After receiving his disciplinary letters, the plaintiff returned to the trailer and continued working for the few minutes remaining in his shift. After the shift ended, two Roadway employees, the union steward, Mr. Woodward, and Joe Johnson, each *593 testified that they saw the plaintiff leaving work and he appeared to be in pain. Upon questioning the plaintiff, each was informed by plaintiff that he had injured his back at work. The plaintiff confirmed that these two conversations occurred.
The plaintiff immediately went home and took a bath to ease his back, which had begun to stiffen. The plaintiff's wife, Mildred Nelson, testified that plaintiff was in pain when he arrived home from work. He then went to bed, but awoke at about 1:00 a.m. on February 28 in severe pain. Later that morning, at 7:30 a.m., the plaintiff called Roadway to report his injury and spoke with Mike Stinson, a terminal operations manager. The plaintiff then went to Willis-Knighton Hospital, where he was seen at 9:30 a.m. by emergency room physician, Dr. Harry E. Fair, Jr. Dr. Fair diagnosed the plaintiff as suffering from a lumbar back sprain and prescribed medication both to decrease muscle inflammation and to relieve pain.
On Sunday, March 1, the plaintiff, still in pain and unable to drive himself, was driven to Roadway by his wife. While he was there, the plaintiff filled out an injury report and presented it to Mr. Capps. On March 2, Roadway, through assistant terminal manager, Harold G. Long, investigated plaintiff's worker's compensation claim and denied the claim.
Subsequently, the plaintiff received additional medical treatment. On three separate occasions between March 2 and March 9, the plaintiff saw the Roadway company physician, Dr. A.A. Bullock. Dr. Bullock concurred in Dr. Fair's diagnosis of a lumbar sprain or strain and directed that the plaintiff receive physical therapy. When the plaintiff showed no improvement from the therapy by March 9, Dr. Bullock referred the plaintiff to Dr. Ragan Green, an orthopedic surgeon.
Dr. Green first saw the plaintiff on March 10, 1987. A myelogram performed on May 29 revealed the plaintiff had a herniated disc at the L4-5 level of his back. On January 26, 1988, Dr. Green performed a double hemilaminectomy, an operation to repair the injury. By April 1988, the plaintiff was discharged from treatment with a permanent ten percent disability to his body. Dr. Green testified that plaintiff can now only repeatedly lift a maximum of 25 pounds, making him unfit to return to his job as a dock checker.
There is no dispute that the plaintiff suffered a back injury, nor that this back injury manifested itself no later than 1:00 a.m. on February 28, 1987. Nor is there any dispute that the January 26, 1988, back surgery was performed to repair the injury which manifested itself at least by the previous February 28. The critical issue is whether the back injury was caused by an accident while the plaintiff was at work at Roadway.
Although the Louisiana Worker's Compensation Act, LSA-R.S. 23:1021, et seq., is to be construed liberally in favor of the claimant, the plaintiff's burden of proof is not relaxed. The burden remains on the claimant to show by a preponderance of the evidence that an employment-related accident occurred and that it had a causal relation to claimant's disability. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974); Hall v. Georgia-Pacific Corporation, 390 So.2d 948 (La.App. 2d Cir.1980). Courts may rely on the testimony of a claimant alone to establish the occasion on which he was injured, if his story is corroborated by surrounding circumstances. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Adams v. Travelers Insurance Company, 345 So.2d 987 (La. App. 2d Cir.1977). Discrepancies or inconsistencies in a claimant's testimony may preclude his satisfying his burden of proof solely through his own testimony. Jones v. Alexander, 399 So.2d 216 (La.App. 2d Cir. 1981), writ denied, 400 So.2d 1383 (La. 1981); 13 W. Malone and H.A. Johnson, Louisiana Civil Law Treatise, "Workers' Compensation" § 253, at 550-1 (2d Ed. 1980).
In the instant case, the plaintiff claims the trial court was in error in finding he failed to prove by a preponderance of the evidence that his back injuries were caused by the work-related accident he described at trial. We note that an appellate *594 court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Accordingly, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Such deference to a trial court's factual findings and credibility determinations applies as well in worker's compensation cases. Culp v. Belden Corporation, 432 So.2d 847 (La. 1983); Jones v. Kentucky Fried Chicken, 483 So.2d 1076 (La.App. 2d Cir.1986). It has been noted that appellate courts are especially reluctant to reverse a trial court decision regarding the occurrence of an accident in a worker's compensation case. W. Malone and H.A. Johnson, supra, § 257, at 564-5.
We find the trial court's determination in the instant case that plaintiff's testimony was not credible is supported by the record and is not clearly wrong. The plaintiff specifically testified that his accident involved the unloading of boxes similar in type to Jim Dandy swing sets. Yet there was significant evidence that the plaintiff did not unload any boxes of Jim Dandy swing sets nor any boxes of a similar weight and size on February 27, 1987.
Additionally, Roadway officials Buddy Capps, Mike Stinson, and Harold Long testified that plaintiff informed them that he "must have" hurt his back lifting boxes at work. A similar, cursory explanation for plaintiff's injury was supplied by plaintiff himself on his accident report, where he simply stated that the accident occurred while "breaking freight," the Roadway expression for unloading trailers. The detailed description of the accident, involving the catching of a specific box that was slipping and an immediate manifestation of pain, provided by plaintiff at trial appears not to have been related to Roadway officials. Further, Stinson testified that when he asked plaintiff why he did not report the injury before he left work, Stinson said plaintiff told him his back was not hurting then. Long's testimony was similar in this regard.
The trial court's rejection of plaintiff's corroborating witnesses, the two co-workers who saw him leaving work in pain on February 27, is likewise supported by the record. Joe Johnson testified that he was coming to work the 10:00 p.m. shift on February 27 when he saw plaintiff leaving work, but Roadway records showed that Mr. Johnson did not work that night. In light of Mr. Johnson's initial emphatic testimony that he was going to work on February 27, his testimony on rebuttal that he may have only been going to pick up his paycheck seems to have been reasonably rejected by the trial court.
The trial court's rejection of the testimony of Ron Woodward was also reasonable. Mr. Woodward testified that he did not remember the incident in which the plaintiff received the disciplinary letters, yet he acknowledged that his signature appeared on those letters. He further testified that, as union steward, he had to insure that an employee who refused to sign such letters properly understood their nature. It must therefore be assumed that he made such inquiries as to plaintiff's understanding of the nature of the letters on February 27. This occurred subsequent to the time plaintiff claimed he was injured. Yet Mr. Woodward did not notice that plaintiff was in pain at that time, only later when plaintiff was leaving work did Mr. Woodward note plaintiff's apparent injury.
We also note that the testimony of Drs. Fair, Bullock, and Green is necessarily dependent upon the veracity of the plaintiff. Although all three doctors testified that it was likely that the plaintiff's injury was causally related to the accident described by the plaintiff, this conclusion is dependent upon the plaintiff's version of the accident being accepted as true. If the plaintiff's testimony is discounted, the medical testimony, premised upon a hypothetical based upon plaintiff's testimony, must likewise be discounted. As we find the trial court has made a reasonable credibility determination rejecting the plaintiff's testimony, the medical testimony likewise becomes insufficient to support a cause for the injury.
*595 In light of our conclusion that the trial court was not clearly wrong in finding the plaintiff failed to prove the existence of an accident, we must reject plaintiff's argument that he is entitled to a presumption that his back injury was caused by the accident he described at trial. In support of his position, plaintiff cites Guillory v. United States Fidelity & Guaranty Insurance Company, 420 So.2d 119 (La.1982), and Bruce v. Pat's Restaurant of Cameron, Inc., 477 So.2d 1283 (La.App. 3rd Cir. 1985). These cases provide that where there is proof of an accident and a following disability, without any intervening cause, it is presumed that the accident caused the disability. This shifts the burden of proof to the defendant to rebut the presumption. The cited cases are inapplicable to the instant case because the trial court has found insufficient proof of an accident, which finding we have determined is not clearly wrong. Where, as here, there has been no proof of an accident, the presumption does not apply and there is no resulting shift in the burden of proof.
Finally, we must comment upon the possibility that the plaintiff's repeated lifting of heavy boxes may have caused his injury. This possibility is more consistent with plaintiff's initial explanation for his injury, that he hurt his back lifting heavy boxes at work on February 27, 1987. At the time of plaintiff's injury, the jurisprudence provided that an accident had occurred for worker's compensation purposes where the conditions of claimant's employment provided continual strain or trauma which cumulatively combined to cause a disabling condition, even though each individual event, in itself, was minor in character. Malloy v. AT & T Consumer Products, Division of AT & T Technologies, Inc., 475 So.2d 80 (La.App. 2d Cir.1985); McCoy v. Kroger Company, 431 So.2d 824 (La.App. 2d Cir.1983).[3] Nevertheless, this was contrary to the accident scenario presented by plaintiff at trial. Also, the medical experts were not questioned as to whether such constant lifting of heavy objects could more probably than not have caused plaintiff's injury. Simply stated, the record does not support a determination that continuous lifting constituted the accident from which plaintiff sustained his injury.
In conclusion, we do not find the trial court to have been clearly wrong in ruling that plaintiff failed to prove by a preponderance of the evidence that his injury was caused by a work-related accident. Accordingly, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Testimony revealed that the issuance of these disciplinary letters was not uncommon at Roadway. There is no evidence that the plaintiff's receipt of these letters might have resulted in his suspension or discharge from Roadway.
[2] There was some discrepancy as to whether or not Mr. Woodward was present during the entire discussion between Mr. Capps and the plaintiff (and therefore would have heard plaintiff tell or attempt to tell Mr. Capps that he had been injured). Mr. Capps testified that Mr. Woodward was present during the entire conversation. The plaintiff testified that Mr. Woodward came into Mr. Capps' office as the plaintiff was leaving. Mr. Woodward did not recall being present at all, although he did acknowledge that his signature appeared on the disciplinary letters and that a union steward had to determine whether a worker understood the nature of the disciplinary letters before the steward could sign for the worker.
[3] These cases have been legislatively overruled by Louisiana Acts 1989, No. 454, § 1, amending the definition of accident in LSA-R.S. 23:1021(1) to reflect that the accident must produce an injury that is more than simply a gradual deterioration or progressive degeneration. See Johnson, "Workers' Compensation, Developments in the Law, 1988-1989," 50 La.L.Rev. 391 (1989).