632 So.2d 367 (1993)
Robert Charles SCHMITT
v.
The CITY OF NEW ORLEANS.
No. 93-CA-1144.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
Rehearing Denied March 17, 1994.
*368 Gilbert R. Buras, Jr., Robein, Urann & Lurye, Metairie, for plaintiff/appellee.
Neil J. Kohlman, Asst. City Atty., Milton Osborne, Jr., Deputy City Atty., Bruce E. Naccari, Asst. City Atty., Kathy L. Torregano, City Atty., for defendant/appellant.
Before BYRNES and JONES, JJ., and DIXON, J. Pro Tem.
JONES, Judge.
Defendant, City of New Orleans appeals a decision of the Administrative Law Judge (herein "ALJ"), awarding appellee, Robert Schmitt, worker's compensation benefits in the amount of $282 per week beginning November *369 4, 1991 and continuing for so long as the appellee is disabled, along with judicial interest, penalty interest, and attorney's fees of $1,000.

FACTS
In January, 1992 the appellee, a former fireman for the City of New Orleans, filed a disputed claim for compensation with the Office of Worker's Compensation Administration. Appellee alleged that his compensation benefits had been unilaterally and arbitrarily terminated by the City of New Orleans on or about October 24, 1991. Appellee demanded reinstitution of compensation benefits, penalties, and attorney's fees for an arbitrary and capricious refusal of benefits.
Attached to the appellee's claim form was a medical report dated November 24, 1991 from the appellee's treating physician, Dr. Robert Ruel, addressed to appellee's attorney. The letter from Dr. Ruel indicated the following: Dr. Ruel first examined the appellee on 11-6-90. The appellee gave a history of initially hurting his back while on the job as a fireman sometime in 1987. He was treated in a conservative fashion. He re-injured his back on 11-5-90 while on the job during training exercises. Appellee complained to Dr. Ruel of numbness and tingling into the left leg. X-rays of the lumbar spine showed defects of spondylolysis bilaterally at L5 at the pas interarticulaus. Additionally there was evidence of lumbar spinal stenosis. A CAT taken in February, 1991 showed hypertrophic (arthritic) changes on left facet joint at L5-S1. Dr. Ruel previously recommended that the appellee retire as a fireman. Dr. Ruel further opined that although the appellee had some preexisting problems in his back, his injuries while on the department aggravated his preexisting problem and caused the problem to become symptomatic.
The City responded to appellee's disputed claim and admitted it had paid weekly compensation benefits of $282 from November 5, 1990 to November 2, 1991. The City admitted that claimant was temporarily disabled for the period stated in the claim for compensation, but denied he was permanently disabled or that he had a loss of earning capacity. The City affirmatively averred that the appellee had been diagnosed as having degenerative disc disease and spinal stenosis; that each condition was now excluded as an occupational disease under R.S. 23:1031.1(B); thus, disability benefits were discontinued on 11/2/91 following a medical workup confirming that the appellee suffered from these conditions.
The sole witness at the hearing on the appellee's claim was the appellee, Robert Schmitt. He testified that he was formerly employed by the City of New Orleans as a fireman. The first injury to his back occurred in 1987 while he was at a fire. Appellee denied any problems or medical treatment for his back prior to the 1987 accident; however, after the 1987 accident he had low back pain and was treated by Dr. Nutik and a chiropractor. Appellee was able to work after the 1987 accident and did not receive any worker's compensation benefits for the first injury.
The second injury occurred while he was loading foam in November, 1990. He made a report after this injury, but remained on duty until two weeks later when he re-injured his back while lifting body drags at training exercises. He made another report of injury and went to see Dr. Ruel. After seeing Dr. Ruel, he was removed from duty and placed on "out with an on-duty injury" status. He was paid worker's compensation benefits from November, 1990 to November, 1991. In March, 1991 the City sent him to see Dr. Montz. In July of 1991, he started receiving a pension, and in November, 1991 the City terminated his worker's compensation benefits.
In support of his claim for benefits, the plaintiff submitted the November 24, 1991 letter from Dr. Ruel diagnosing the plaintiff as having spondylolysis and spinal stenosis and a letter dated November 5, 1987 from Dr. Nutik.[1] The City attempted to introduce *370 a report from Dr. John R. Montz, the physician chosen by the City to examine the appellee pursuant to the provisions of La.R.S. 23:1122. However, the appellee objected to the admission of the report arguing that the report had not been provided to him prior to the date of the trial. The ALJ sustained the objection to the admission of the report, but allowed the City to proffer the report.
At the conclusion of the hearing the ALJ entered a judgment in favor of the appellee awarding the appellee compensation at the rate of $282 per week, interest, penalty interest, and attorney's fees of $1,000. Although the ALJ did not give written reasons for the judgment, the following oral reasons were assigned:
In this case, the accident's been proved,... this man had a previous condition, in fact, the evidence in all the reports show that the accident aggravated and contributed to the added disability to make the back symptomatic so that he could not go back to work.... He was put on compensation by the City at the rate of $287 a week. Now, that was after the accident of November 1990. They cut him off on November 4th, 1991. No justification was shown to me for cutting him off on November 4th, 1991; therefore that action is arbitrary, capricious and without probable cause; therefore, the judgment's going to be judgment herein awarding compensation, back compensation with penalty, interest and attorney fees.

DISCUSSION AND LAW
In its first assignment of error the City argues that the ALJ abused its discretion by not allowing Dr. Montz's report to be admitted into evidence.
The City cites no cases to support its argument that this was error.
Pursuant to La.R.S. 23:1122 the medical report of the physician selected by the employer to perform a medical examination on the claimant is admissible and constitutes prima facie evidence of the facts contained therein. However, in order for the report to be admitted, the employer must establish that the report was timely mailed to the employee within the time period specified in the statute (i.e. within six days after the employer's receipt of the report). Richard v. Guillot, 271 So.2d 719 (La.App. 1 Cir.1972). The City offered no evidence to establish that Dr. Montz's report had been timely mailed to the appellee. Indeed, appellee's attorney objected to the admission of the report on the grounds that he had never seen the report prior to the day of trial. The City argues that the report was obviously available to opposing counsel since the appellee knew he had gone to Dr. Montz and there would be a report. The burden of proof was on the City to send the report timely. Absent a stipulation between the parties, the report constituted hearsay evidence and was not admissible.
The City also argues that since the ALJ allowed appellee to submit his medical report into the record without calling his treating physicians, the ALJ should have allowed the City's report to be admitted as well. The record indicates that the City stated that it had no objection to the admission of appellee's medical reports into the record. By stating that it had no objection to the admission of the appellees' medical reports, the City essentially waived any right to challenge the admission of those reports. Any prejudice which the City may have suffered because of the failure to admit Dr. Montz's report was caused solely by the City's failure to comply with the procedural rules regulating the admission of such reports. The City's argument that the trial court erred in not admitting Dr. Montz's report has no merit.
In its second assignment of error, the City argues that the ALJ erred in awarding worker's compensation benefits as appellee failed to establish a prima facie case for entitlement.
The City argues that in order to establish entitlement to benefits, a claimant must show that his disability was caused by an on the job accident. The City argues that La. 23:1021(1) and La. 23:1031.1 specifically exclude appellee's pre-existing degenerative disc disease from coverage, even if brought on or aggravated by years of work as a fireman.
*371 Pursuant to La.R.S. 23:1031.1 an employee who becomes disabled because of an occupational disease is entitled to receive compensation benefits the same as if said employee received personal injury by accident arising out of and in the course of his employment. However, La.R.S. 23:1031.1(B) provides:
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.... Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section. [Emphasis Added]
According to Dr. Ruel the disabling conditions which prevent the appellee from working as a fireman are spondylolysis and spinal stenosis. Pursuant to the above section, these conditions are specifically excluded from the definition of occupational disease. Thus in order to come within the provisions of the act the plaintiff must establish that his injury was caused by an accident.
Pursuant to the 1989 Amendments to the Worker's Compensation Act, La.R.S. 23:1021 was amended to redefine accident as follows:
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
The City argues that Dr. Ruel's report of November 24, 1991 suggests that any disabling condition through aggravation of appellee's disc disease was brought on by years of work and/or several injuries on the job, not one identifiable, precipitous event. Thus, the City argues the appellee has not carried his burden of showing an "accident" causing an injury which is compensable.
The language of La.R.S. 23:1021, on its face, would seem to exclude the injury suffered by the appellee. However, in order to reach that conclusion we must necessarily conclude that by redefining accident, the Legislature has overruled the previous jurisprudence which holds that if the accident makes the disease become symptomatic, the plaintiff may recover. This would undoubtedly be true in this case where the appellee testified that he had no serious back problems before the 1987 accident, and that after the 1987 accident he had no problems until the 1990 accident. After the alleged accident of 1990, his back problems recurred and he subsequently became disabled. Plaintiff's conditions appear to be gradually deteriorating or progressively degenerative conditions, which are arguably specifically excluded from the definition of accident.
However, several recent cases have concluded that in redefining accident the legislature did not intend to specifically exclude from coverage all employees suffering from degenerative diseases. Rather, an otherwise healthy employee with a preexisting condition is entitled to benefits if he can prove that his work contributed to, aggravated, or accelerated his injury. Dyson v. State, 610 So.2d 953 (La.App. 1 Cir.1992). In Dyson, a plaintiff with plantar fascitis was standing at the photocopier making copies and felt a very sharp pain shoot through her feet as she turned or pivoted to pick up a large bundle of copies. Despite the fact that plantar fascitis appeared to meet the definition of a condition characterized by gradual deterioration, the court held that where the plaintiff specifically identified the moment her preexisting condition became an injury as being the moment that she was standing at the photocopier at work, plaintiff was entitled to compensation benefits. In ruling for the plaintiff the court stated:
Cases suggesting that the amendments to section 1021(1) were meant to exclude from coverage people like Mrs. Dyson, and many others, who are worn down by their work rather than immediately crippled by it are not consistent with the purpose of the worker's compensation scheme, and are not to be followed. See Nelson v. Roadway Express, Inc., 573 So.2d 591, 595 *372 n. 3 (La.App.2d Cir.), reversed on other grounds, 588 So.2d 350 (La.1991). Considering the nature of Mrs. Dyson's injury in light of these amendments, we are still able to find that Mrs. Dyson did suffer an accident within the meaning of La.R.S. 23:1021(1), and is, therefore, entitled to worker's compensation benefits.
Dyson, supra 610 So.2d at 956.
Similarly in Rice v. AT & T, 614 So.2d 358 (La.App. 2 Cir.1993) the Second Circuit examined the 1989 amendment and concluded that the term accident included a weakened condition which collapses due to a precipitous event, but does not include a weakened condition which gradually degenerates over time. In Rice, id., a plaintiff with a history of back problems was working on the assembly line at AT & T installing parts in cable telephones. The plaintiff attempted to push her chair closer to the assembly line, while at the same time twisting and turning to reach the parts to be installed on the telephones. She felt a tightness in her back, radiating down into her right leg, causing her leg to go numb. Upon seeing her physician two days after the incident, it was discovered that she had a large recurrent disc at the L4-L5 level. The Second Circuit stated:
... the issue ultimately becomes whether the legislature, through the 1989 amendment, where a degenerative condition is involved, intended to provide compensation only for an accident caused by an extraordinary exertion, over and above the routine tasks of employment, or whether it also intended to include compensation for an incident such as the instant one where a relatively minor occurrence produced an objective indication of injury.
In concluding that the Legislature did not intend to limit the definition of accident to only extraordinary exertions, the court noted that in a different part of the 1989 Act the Legislature also amended La.R.S. 23:1021(7)(e) to specifically provided that in heart-related or perivascular injuries a heightened physical work stress requirement must be met. Since the legislature did not opt to include this more stringent test in the definition of accident involving a gradually deteriorated or progressively degenerative condition, the court concluded that no extraordinary exertion was required.
Although the court basically followed the reasoning of the Dyson court, the court reaffirmed the observation expressed in the much criticized Nelson v. Roadway Express, Inc., 573 So.2d 591, 595 n. 3 (La.App.2d 1991), reversed on other grounds, 588 So.2d 350 (La.1991) that:
the amendment to the definition of accident was clearly intended to reverse the jurisprudential trend of permitting coverage for disability that did not fit the prior statutory definition of accident.
Rice, supra 614 So.2d at 361.
Notwithstanding this belief, the court concluded that by enacting the 1989 amendment to La.R.S. 23:1021(1) requiring that the injury be more than a gradual deterioration or progressive degeneration, the legislature had adopted the inconsistency noted in McCoy v. Kroger Company, 431 So.2d 824, 829-30 (La. App. 2 Cir.1983) wherein the court stated:
We suggest that a compensation scheme that compensates an employee because his degenerative condition suddenly collapses from the continual strain, trauma or exposure in his work place, but does not compensate the employee whose condition deteriorates over a period of time to the extent he cannot work, but does not actually suffer a "collapse", is logically inconsistent.
The Rice court noted that a comparison of the statute before and after the amendment led them to conclude that the term accident now includes a weakened condition which collapses due to a precipitous event, but does not include a weakened condition which gradually degenerates over time. The court concluded that for purposes of the instant case, the key requirement under the amended definition of accident is that the event directly produced sudden objective findings of an injury rather than being merely a manifestation of a gradual deterioration or progressive degeneration. Rice, supra 614 So.2d at 361.
Similarly, in Carter v. Smith, 620 So.2d 942 (La.App. 3 Cir.1993) the Third Circuit, citing Dyson, supra, and Rice, supra, found that an employee who suffered a meniscus tear while *373 nailing new shingles on a roof was entitled to receive benefits, notwithstanding the employer's argument that the plaintiff's injury was the result of a gradual deterioration of the plaintiff's right knee.
In the instant case, as in Dyson and Rice, the appellee's testimony and the medical report of his treating physician, Dr. Ruel, established that the 1990 incident which occurred while he was on the job was the precipitous event which caused his back to become symptomatic. For this reason, we find that the injury alleged by the plaintiff is not specifically excluded from the definition of accident found in La.R.S. 23:1021.
The next issue to be addressed is whether the plaintiff established that he was entitled to any specific type of benefits. Although the hearing officer found that plaintiff was entitled to benefits, he did not specify what type of benefits were due. Worker's Compensation benefits are payable pursuant to the provisions delineated in La.R.S. 23:1221. At the time of the claimant's accident in November, 1990, the pertinent sections of La.R.S. 23:1221 provided:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two thirds percent of wages during the period of such disability.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at the time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
The above cited provisions require that a claimant seeking temporary total benefits or permanent total benefits pursuant to the Worker's Compensation Act must prove that he is unable to engage in any gainful *374 occupation, whether or not the same type of work he was engaging in at the time of injury. Zanca v. Exhibition Contractors Co., 614 So.2d 325, 328 (La.App. 4 Cir.1993); Ferrand v. D.H.L. Co., 614 So.2d 350, 352 (La. App. 4th Cir.1993); Sharpless v. Jo Ellen Smith Medical Center, 557 So.2d 287, 288 (La.App. 4th Cir.), writ denied, 558 So.2d 606 (La.1990).
Additionally, an applicant for permanent total benefits must also prove that his disabling injury is permanent and not just for an indefinite period, Guillory v. City of Lake Charles, 614 So.2d 165, 168 (La.App. 3rd Cir.1993), writ denied, 616 So.2d 700 (La.1993).
Neither the appellee's testimony nor the medical reports support a finding that the appellee proved by a preponderance of the evidence that he could not perform any gainful occupation. Noticeably absent from the record is any testimony from the appellee that his back still bothers him or that his back problems prevent him from engaging in any type of work.[2] His treating physician's reports merely support a finding that he can no longer work as a fireman or work in any labor type work. The issue of whether the appellee can engage in sedentary work was not addressed by the medicals or by his testimony. Since the appellee failed to establish by clear and convincing evidence that he cannot perform any type of work, he is not entitled to permanent total or temporary total benefits.
The only remaining type of benefit is supplemental earnings benefits.
In order to establish entitlement to these benefits, a claimant must show that because of his injury, he is no longer able to earn wages equal to ninety per cent or more of the wages earned prior to the injury. Since the record contains no testimony concerning the appellee's educational level, previous training, or work experience, we are unable to determine if he might be entitled to Supplemental Earnings Benefits (SEB) under La. 23:1221(3). Since the appellee made no prima facie case of entitlement to permanent total, temporary total, or supplemental earnings benefits, the trial court erred in ordering the City to continue to pay appellee weekly benefits.
In its third assignment of error, the City argues that the ALJ erred in not providing written reasons for Judgment. In the instant case, the failure to provide written reasons did not prejudice this appellant because the record contains the reasons orally assigned for the judgment at the conclusion of the hearing. For this reason, this assignment of error has no merit.
In its final assignment of error, the City argues that the trial court erred in assessing penalties and attorney's fees.
An assessment of penalties and attorney's fees is proper unless the employee's rights to benefits are reasonably controverted. The employee's right to receive compensation benefits and payment for medical expenses will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation and medical expenses were not due. Rice, supra 614 So.2d at 361; Coley v. Wilson Oil Co., Inc., 620 So.2d 445, 452 (La.App. 3 Cir. 1993); Guidry v. United Furniture Distributors, Inc., 544 So.2d 100 (La.App. 3rd Cir. 1989).
The City paid appellee weekly benefits of $287 from the time of his accident in November 1990 until November 1991. Prior to terminating the appellee's benefits, the City sent appellee to see Dr. Montz, who issued a report stating that the appellee was suffering from degenerative disc disease, but that many people with this disease are able to carry out their normal jobs. After reviewing the appellee's medical history and considering the language of La.R.S. 23:1031.1 the City concluded that disability benefits should be discontinued because the appellee had been diagnosed as having degenerative disc disease and spinal stenosis, diseases which arguably were excluded from coverage based on the new definition for occupational disease given in La.R.S. 23:1031.1(B).
At the time that the City terminated plaintiff's benefits in November, 1991 the issue of *375 how the new definition of accident contained in the 1989 amendment would be interpreted by the courts was unsettled. At least one court had suggested that Louisiana Acts 1989, No. 454, § 1, amending the definition of accident in La.R.S. 23:1021(1) had legislatively overruled the earlier jurisprudence which provided that an accident had occurred for worker's compensation purposes where the conditions of claimant's employment provided continual strain or trauma which cumulatively combined to cause a disabling condition. Nelson v. Roadway Express, Inc., supra, 573 So.2d at 595.
Considering these facts and the closeness of the issue as to whether the new definition for accident and the new definition for occupational disease contained in the 1989 amendments to La.R.S. 23:1021 and La.R.S. 23:1021(1) would be interpreted to exclude all injuries related to preexisting diseases or illnesses, the City had a reasonable basis for terminating appellee's weekly compensation benefits. Accordingly, the imposition of penalties and attorney's fees was not warranted.
The judgment of the trial court granting appellee benefits and ordering the City to pay penalties and attorney's fees is reversed. Because the record does not contain sufficient information for this court to determine whether the appellee is entitled to receive supplemental earnings benefits, the case is remanded for an evidentiary hearing on this issue.
REVERSED AND REMANDED.
NOTES
[1] The letter from Dr. Nutik indicated that appellee had suffered a soft tissue strain about the low back at the time of an occupational injury on October 13, 1987, but that the matter had completely resolved. X-rays revealed the presence of a severe degenerative disc at the L4-5 level, which at the time of Dr. Nutik's examination was clinically asymptomatic.
[2] Significantly, Dr. Montz's report states that when examined on 3-20-91 the appellee stated that he spends time doing hobbies about his house, that he mows his own lawn and drives.