654 So.2d 785 (1995)
Gary C. HERTY
v.
The CITY OF NEW ORLEANS.
No. 94-CA-1960.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1995.
*786 Neil J. Kohlman, Asst. City Atty., Avis Marie Russell, City Atty., New Orleans, for appellant.
Robert T. Myers, Young, Richaud, Theard & Myers, New Orleans, for appellee.
Before SCHOTT, C.J., and BYRNES and LOBRANO, JJ.
BYRNES, Judge.
The City of New Orleans ("City") appeals a hearing officer's decision and ruling awarding supplemental worker's compensation benefits to a fireman. We affirm in part, reverse in part, and remand.
Gary C. Herty, a Captain with the New Orleans Fire Department, testified that he fell over a hose while exiting a fire building on March 2, 1992, injuring his left ankle.
The City paid the claimant $295 per week in compensation, as well as medical expenses, from March 2 until July 1992. The claimant applied for and received a disability retirement pension under La.R.S. 11:3376 in the amount of $1,856 monthly beginning on July 31, 1992.
After a hearing on the disputed claim for worker's compensation, in a judgment dated July 30, 1993, the hearing officer awarded Gary Herty supplemental earnings benefits in the amount of $295 per week, reimbursement of $300 for prior medical expenses, future medical expenses, including an orthopedic shoe and fusion surgery, and $5,000 for penalties and attorney's fees. In a ruling dated August 25, 1993, the hearing officer found that the City was not entitled to *787 offset disability benefits because it failed to meet its burden of proving the amount of credit to which it is entitled.
On appeal the City contends that the trial court erred in: (1) finding a compensable accident; (2) finding that the claimant was entitled to supplemental earnings benefits; (3) denying the City an opportunity to prove the amount of offset to which the City was entitled; and (4) awarding penalties and attorney's fees. Herty requests increased attorney's fees for the appeal.
Initially, the City argues that there was no compensable accident under LA.R.S. 23:1031.1(B)[1] and La.R.S. 23:1021(1).[2] The City asserts that there were no objective findings showing that the claimant suffered any new injury due to the twisted ankle because the x-rays showed that no new injuries or acceleration of claimant's preexisting degenerative arthritic condition occurred as a result of the incident at work. Therefore, the City claims that there was no "accident" or injury other than the minor sprain, and claimant's degenerative arthritic condition was excluded as an occupational disease under La.R.S. 23:1031.1(B).
In a worker's compensation case, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530 (La. 1/14/94), 630 So.2d 733. The term "accident" includes a weakened condition which collapses due to a precipitous event, but does not include a weakened condition which gradually degenerates over time. Rice v. AT & T, 614 So.2d 358, on rehearing (La.App. 2 Cir.1993). An employee's disability is compensable if a preexisting condition or disease is activated or precipitated into a disability manifestation as a result of work. Doucet v. Baker Hughes Production Tools, 93-3087 (La. 3/11/94), 635 So.2d 166. In that case the Louisiana Supreme Court found that the hearing officer was not manifestly erroneous or clearly wrong in finding that Doucet's disability resulted from his employment related accident where the claimant's physicians stated that Doucet's preexisting spondylolisthesis was asymptomatic before the accident and Doucet was able to perform his job whereas Doucet is now symptomatic and unable to perform the same or similar work.[3]
In the present case, Herty and his co-worker Kevin Lee testified that while exiting a fire building at 2132 Seventh Street, Herty had to jump down because there were no steps, and he twisted his foot when he tripped over a hose. The testimony was supported by an accident report and a second Employer's Report of Occupational Injury or Disease dated March 2, 1992. Dr. Robert Ruel, an orthopaedic surgeon, testified in his deposition dated February 4, 1993, that the employment related accident was responsible for Herty's current problems resulting in his being unable to return to his former employment. Dr. Ruel stated that: "The injury occurred, and [Herty] never got better. He went on to a chronic sprain syndrome and full-blown arthritic symptoms at this time, which he did not have before this injury." Dr. Ruel's diagnosis that Herty needed a surgical fusion due to the injury to his left ankle was supported by the report of Dr. John Montz. In his report Dr. Jack P. Ruli agreed with the other physicians that Herty is unable to function as a fireman because it is unsafe for him to climb and carry heavy objects.
*788 There is no question that Herty had a preexisting arthritic condition which was mildly symptomatic prior to the accident. But it did not prevent him from performing his job duties. After the accident his arthritis became grossly symptomatic, preventing him from working. Based upon the cases cited above, these facts show that his injury is compensable. We cannot find that the hearing officer was clearly wrong in finding a compensable accident occurred.
The City also claims that Herty is not entitled to supplemental earnings benefits under La.R.S. 23:1221(3)(a) because Herty failed to show that his accident directly resulted in an inability to earn at least 90 percent of his former wages.
Herty's annual salary as a fire fighter was $43,900, whereas his annual earnings following the accident equalled $12,480 from his taxicab business. Herty asserts that the City called no witnesses and there was "no establishment whatsoever of plaintiff's ability to earn earnings anywhere above the income he is presently receiving from his taxicab business which he manages since he is unable to drive a taxicab."
Keeping in mind that the worker's compensation law is to be liberally construed in favor of coverage, claimant has the initial burden of showing that the work-related accident results in an inability to earn at least 90 percent of his former wages. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129. Once the employee's burden is met, the burden of proof then shifts to the employer who must show that the claimant is physically able to perform a certain job and that job was offered to the employee or that job was available to the employee in the employer's community or reasonable geographic region. Id.
In the present case, the record shows that the claimant was 42 years old at the time of trial. He had a high school education and attended Delgado College for approximately 12-15 hours of credit for Fire Technology. The claimant was employed as a fire fighter since the age of 18. The plaintiff was employed in the same profession for over 20 years, advancing to the position of captain, and it would take time to advance in another field. Claimant has no other vocational training, and the doctors' reports show that he is limited to sedentary work after surgery.
Susan Davidson, the City's rehabilitation consultant, did not testify at trial. Her two reports were entered into evidence. In her initial evaluation report of June 25, 1992, she provided employment descriptions, including employment as a dealer at a casino. However, she did not show that any particular position was available to the employee. Ms. Davidson stated: "The existence of those types of jobs would have to be verified through a Labor Market Survey, as well as contact with the City's Civil Service Office." A survey was not entered into evidence.
Although in her final report of July 17, 1992 Ms. Davidson stated that she contacted Civil Service for documentation of sedentary positions and wages, that documentation is not in the record. Mrs. Davidson reported that she verified that World Wide Gaming was taking applications for a number of job openings such as cashier, account clerk, route collection and supervisor/manager. However, information with respect to salaries was not included. Ms. Davidson did have a job description of an Airport Communication Specialist at a higher hourly rate beyond the minimum wage rate of $956.00 per month; however, no amount is provided to compare to the claimant's previous salary as a fire fighter.
Under the circumstances the hearing officer was not clearly wrong in determining that the claimant could not find employment at 90 percent of his present salary where no other positions were shown to be available that claimant was capable of performing. Therefore Herty is entitled to supplemental earnings benefits.
The City also complains that although the hearing officer found that the City was entitled to an offset under La.R.S. 23:1225 C,[4] *789 the hearing officer erred in denying the City the opportunity to prove the amount of offset to which it was entitled.
The hearing officer reviewed Cousins v. City of New Orleans, 608 So.2d 978 (La. 1992). In that case the Louisiana Supreme Court found that the City was not entitled to an offset as a result of the employee taking a disability benefits plan where the claimant was receiving the same amount of benefits from a disability plan that he would have been entitled to receive under a tenure-based plan. Cousins was eligible for the retirement plan because his right had vested after 20 years of employment.[5]
However, in the present case, to be eligible for the retirement benefits pension plan under La.R.S. 11:3384, a fire fighter hired after December 31, 1967 is required: (1) to have been employed for 20 years, and (2) to have reached the age of 50. Although the fire fighter's right to retirement benefits is vested after 20 years, he is not entitled to receive retirement benefits until he is 50 years old. We agree with the hearing officer's ruling that the City is entitled to the offset under La.R.S. 23:1225 C until the claimant reaches the age of 50.
We disagree with the City's argument that once a claimant has chosen a service-connected disability, he cannot change to a retirement based pension so that the City is entitled to an offset after the claimant reaches the age of 50. In Cousins, the Louisiana Supreme Court stated:
There is no compelling reason for holding that plaintiff forever forfeited his vested right to receive retirement benefits when he elected to take the equal amount of disability benefits. Plaintiff's technical election between pension plans did not have a binding effect on the rights of any party. Both plans were part of the same statutory scheme for firefighters and were funded from the same pool. There would have been no detriment to the Fund if plaintiff had transferred from receiving disability benefits to receiving the retirement benefits to which he was equally entitled, as long as he did not receive both at the same time.
The employer is entitled to an offset until the time when the claimant would be eligible for the retirement pension, i.e., when the claimant reaches the age of 50, having been employed as a fire fighter for 20 years.
After reviewing the memoranda concerning the application of Cousins, the hearing officer ruled that although the City had the right to an offset, the City did not meet its burden of proving the amount of credit to which it was entitled. Therefore the City's request for an offset was denied. The City contends that it is entitled to a hearing on the issue of the amount of credit for the offset.
In the original hearing of July 22, 1993, the following conversation occurred:
THE COURT:
Then just do a quick brief on the Cousins case. The same thing stands if I find that Cousins does not prevent the employer from taking an offset, we will set a hearing date on the figures.
[City Attorney]:
That will be a separate hearing.
THE COURT:
That's for certain. I won't forget you. Further, in the July 30, 1993 Judgment on the other issues, the hearing officer stated that if necessary he would schedule a hearing *790 on the Cousins issue after the memoranda were submitted. No additional hearing was held. Based on the conversation at the July 1993 original hearing and the judgment, the City was not remiss in interpreting the Court's statements to mean that if the hearing officer found that the City was entitled to an offset under Cousins, a hearing would be held concerning the amount of the offset. Therefore, the case should be remanded for an evidentiary hearing on this issue.
Finally, the City contends that the hearing officer erred in assessing penalties and attorney's fees under La.R.S. 23:1201 and 1201.2.
The employee's right to receive compensation benefits and payment for medical expenses will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation and medical expenses were not due. Schmitt v. City of New Orleans, 632 So.2d 367 (La.App. 4 Cir.1993). In Schmitt, 632 So.2d at 375, this court stated:
Considering ... the closeness of the issue as to whether the new definition for accident and the new definition for occupational disease contained in the 1989 amendments to La.R.S. 23:0121 and La.R.S. 23:1021(1) would be interpreted to exclude all injuries related to preexisting diseases or illnesses, the City had a reasonable basis for terminating the claimant's weekly compensation benefits. [Emphasis added.]
In that case as in the present case, at the time that the employer terminated claimant's benefits, the interpretation of the amendments by the courts was unsettled. See also Rice v. AT & T, supra. Where Herty suffered from a sprain superimposed on a preexisting degenerative arthritic condition, the City had a reasonable basis for terminating the claimant's compensation benefits. Therefore, the ruling ordering the City to pay penalties and attorney's fees is reversed, and Herty's request for additional attorney's fees on appeal is also denied.
Accordingly, the judgment of the hearing officer is reversed with respect to attorney's fees and penalties, as well as to the determination of the amount of the offset due to the City. The judgment is affirmed in all other respects. The case is remanded for an evidentiary hearing to determine the amount of the offset to which the City is entitled.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] La.R.S. 23:1031.1(B) provides:

B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this section.
[2] La.R.S. 23:1021(1) provides:

(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
[3] Doucet was injured on April 23, 1990, after the amendments to La.R.S. 23:1031.1(B) and 23:1021(1) became effective on January 1, 1990.
[4] La.R.S. 23:1225 C provides:

C. (1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregare remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage.
[5] In Matthews v. City of Alexandria, 619 So.2d 57 (La.1993), the Louisiana Supreme Court stated: "LSA-R.S. 23:125(C)(1)(c) allows a credit for disability retirement benefits in the proportion funded by the employer, but this does not include retirement benefits based on tenure." In that case the two claimants had been employed by the fire department for less than 20 years and were not vested in the fireman's pension fund.