673 So.2d 267 (1996)
Tyrone SMITH
v.
HAMP ENTERPRISES, INC.
No. 95-CA-2343.
Court of Appeal of Louisiana, Fourth Circuit.
April 17, 1996.
*268 Wayne H. Carlton, Jr., Bendana, Carlton & Sharp, New Orleans, for Appellee.
Denis Paul Juge, Juge, Napolitano, Leyva & Guilbeau, Metairie, for Appellant.
Before BYRNES, WALTZER and LANDRIEU, JJ.
BYRNES, Judge.
Plaintiff, Tyrone Smith, sustained a superficial cut to his left knee on broken glass on October 12, 1993, while in the course and scope of his employment with Hamp Enterprises. He was taken to American Medical International Occupational Health Center ("AMI") where the wound was sutured. On October 14, Dr. Tamimie of AMI released Smith to modified work with restrictions of no stair climbing, and no frequent bending or squatting. On October 19, 1993, he was discharged by AMI with no work restrictions, whereupon he returned to work.
On December 23, 1993, he returned to AMI complaining of problems with his knees. He was seen by Dr. Axelrod who released him to return to his regular work duties. Smith returned on January 13, 1994 at which time he was placed on disabled status. On January 19, 1994 he was released to regular work duties and was discharged. He was laid off during this week of disability.
On January 5, 1994 Smith was examined by Dr. Linder who recommended and scheduled a scar revision for January 12, 1994. Dr. Linder recommended the scar revision because the scar was raised and Smith's complaints of pain indicated the possibility of glass fragments remaining under the scar after the initial injury. A scar revision could produce a flat scar less susceptible to abrasion while affording an opportunity to remove glass fragments. The scar revision was not performed as scheduled because the *269 claims adjuster requested a second opinion pursuant to which Smith was examined by Dr. Dupin on January 13, 1994. Dr. Dupin recommended against a surgical revision. Dr. Dupin felt that an elastic protector would be sufficient to protect the scar from abrasion and would not entail any of the risks of a second surgery. Subsequently the claims adjuster changed her mind and approved the revision surgery. Dr. Linder reexamined Smith on May 18, 1994 and determined to proceed with the scar revision. Dr. Linder performed the surgery on May 18, 1994 and released Smith on August 8, 1994 without any restrictions.
Based on Dr. Axelrod's report the trial court found that Smith was temporarily, totally disabled from January 13, 1994 until January 19, 1994 and awarded temporary total disability benefits accordingly. It was the opinion of Dr. Linder that Smith was able to work without restriction between January 5, 1994 and June 10, 1994. We cannot say that the trial court was manifestly erroneous in basing its finding on reasonable inferences to be derived from Dr. Axelrod's report in preference to the deposition testimony of Dr. Linder.
The trial court found that Smith failed to prove by clear and convincing evidence that he was unable to engage in any employment or self-employment between January 19, 1994 and June 10, 1994. Therefore, the trial court did not award Smith temporary total disability benefits for that period of time. Smith does not contest this finding on appeal.
The major issue of this appeal is the award by the trial court of Supplemental Earnings Benefits for the period beginning January 13, 1994 and ending June 10, 1994 based on findings that Smith was partially disabled and unable to earn 90% of his wages for that period. The burden of proof in such situations was described by this Court in Herty v. City of New Orleans, 94-1960, p. 5 (La.App. 4 Cir. 4/13/95), 654 So.2d 785, 788: Keeping in mind that the worker's compensation law is to be liberally construed in favor of coverage, claimant has the initial burden of showing that the work-related accident results in an inability to earn at least 90 percent of his former wages. Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129. Once the employee's burden is met, the burden of proof then shifts to the employer who must show that the claimant is physically able to perform a certain job and that job was offered to the employee or that job was available to the employee in the employer's community or reasonable geographic region. Id.
See also: Adams v. City of Shreveport, 27,284, p. 2 (La.App. 2 Cir. 8/23/95), 660 So.2d 127, 128, writ not considered, 95-2433 (La. 12/8/95), 664 So.2d 417.
Thus, in determining eligibility for Supplemental Earnings Benefits, the burden initially is on Smith to show that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. Smith v. Louisiana Dept. of Corrections, 93-1305, (La. 2/28/94); 633 So.2d 129, 132.[1] The trial court should take into account all those factors which might bear on an employee's ability to earn a wage. Id.
As the hearing officer found that Smith had failed to prove that he was unable to engage in any employment or self-employment between January 19, 1994 and June 10, 1994, he is presumed to be able to find some kind of employment within the limitations of his injury. Therefore, Smith has the initial burden of proving that such work as he can obtain will not enable him to earn at least 90% of his former wages. Id.
The hearing officer failed to apply this burden properly. The hearing officer held that because Smith was unemployed at the time of the trial, the burden was on Hamp to prove the availability of suitable *270 employment that would provide Smith with at least 90% of his former wages. This was error, and inconsistent with the prior finding of the hearing officer that Smith failed to prove that he could not work, because the burden of proof does not shift to Hamp's until after Smith bears the initial burden of putting on a prima facie case of lack of "90%" employment which he failed to do. Id.; Herty, supra. The hearing officer relied on Hebert v. Grey Wolf Drilling Co., Inc., 611 So.2d 674, 677 (La.App. 3 Cir.1992). To the extent that Hebert and other cases like it conflict with the law of this circuit as expressed in Herty and the law as expressed by the Louisiana Supreme Court in Smith we shall not follow them. To do otherwise would provide a claimant with a strong incentive to remain unnecessarily unemployed. In saying this we recognize that the more obviously and severely disabling an injury is, the less extrinsic evidence should be required to establish an initial prima facie case of entitlement to Supplemental Earnings Benefits.
In this regard, Smith testified that he made no attempt to look for other employment. Smith injured his left knee again after the accident that is the subject of this suit. He was asked if he mentioned the injury sub judice when the doctor examined him in connection with the subsequent accident. He responded: "No, I didn't because it wasn't a big problem." Smith stated that at the time he was laid off his job "was basically a whole lot of heavy lifting ..." When asked by counsel for Hamp if doing heavy lifting bothered him he stated unequivocally: "No, that didn't bother me." The hearing officer, apparently in an effort to be sure he had clearly understood Smith's statement about heavy lifting, also asked Smith if he felt he could do heavy lifting, to which Smith responded affirmatively. Smith admitted that he could have continued at his job had he not been laid off. Even the hearing officer found that: "Claimant contends that he could have performed other duties, i.e., heavy lifting at the job site for an additional two to three weeks."[2]
Dr. Linder, Smith's treating physician testified by deposition that Smith was capable of working without restriction between January 5, 1994 and June 10, 1994. Dr. Linder explained:
In other words, you can just get so much restriction for a cut less than an inch on your knee. Otherwise, this injury was basically what kids do when they skin their knee falling off a bicycle and sustain a cut. It was a superficial cut. It went through skin only. It did not involve any other items.... It was a superficial skin cut basically is what was involved.
* * * * * *
I don't know what kind of work he does, but I couldn't conceive of that small of a cut causing a whole bunch of pain for months and months where he couldn't work.
Dr. Brunet issued a report on January 27, 1994 in which he opined that Smith had sustained a prepatellar bursar rupture when he injured his knee. When Dr. Linder performed the scar revision the only damage he found was a superficial cut. He found no rupture and no glass or other debris under the scar. In short, Dr. Linder, who was indisputably in the best position to know, found no objective evidence to support Smith's subjective pain.
When asked what effect Dr. Linder's opinion had on his diagnosis of internal damage, Dr. Brunet replied that:
[Dr. Linder] had a direct look at it. I'd have to defer to him because he's in a positionmuch better position to judge than I was, not having the skin open and being allowed inspection deep into that."
Dr. Brunet testified Mr. Smith may have had a thicker than normal scar that could have caused him pain in a crawling job or if he attempted to flex his knee fully while wearing tight fitting jeans. Dr. Brunet was questioned about this:
Q. From what you could tell, I mean, was it to the point where he could not do that type of work or what?

*271 A. It's possible. Whether it's likely or not, I don't know that I could say. And mainly because it's a subjective type of thing thatas I recall, Mr. Smith's not a small man. He's a big man. And that's a lot of pressure on a small given area of skin, and it's possiblyI can envision some circumstances where when asked to kneel and put pressure on that area he couldn't do. Now, if this negated his job or not, I don't have enough information to make that kind of decision or at least guesstimate.
Q. So whether or not he could tolerate any discomfort is purely a subjective factor on his part.
A. It always is.
Q. Absent the kneeling orin fact, you said the squatting may not be a problem, but the actual kneeling would be more of a problem, if I'm not mistaken.
Q. The problem comes with pressure. Now, if he's got a tight pair of jeans on and he flexes his knee fully, when the jeans constrict the front of his knee and puts pressure there, then that's a source of pressure. I mean, just to
Q. Absent [kneeling and full knee bends in tight blue jeans], would you find any reason why he couldn't work absent those two particular aspects of the job?
A. No.
Dr. Brunet also testified that regardless of subjective pain, employment requiring crawling or kneeling would not aggravate Smith's injury.
This is very different from the facts in Smith. In Smith the claimant was a prison guard who lost 95% of his vision in one eye when struck by an inmate. He was advised by his doctor to avoid any physical confrontation that may involve trauma to the eye. The record contained a litany of unsuccessful attempts by the claimant to obtain employment in a field which did not entail the risk of physical confrontation. For example, the claimant applied for a welding position because he had previous welding experience, but was told by his prospective employer that such a job would entail too much risk to him. It was only at this point that the Supreme Court found that:
[P]laintiff made out a prima facie case of inability to find employment paying 90% of his pre-injury wages and entitlement to supplemental earnings benefits.... The burden then shifted to the defendant to prove that plaintiff could physically perform a specific job that was available in his geographic location. LSA-R.S. 23:1221(3)(c)(i). [Emphasis added.]
Smith, 633 So.2d at 134.
Likewise in Herty, supra, there was substantial medical testimony to support the injured worker's claim including doctors' reports that the claimant was limited to sedentary work; evidence of educational and work experience; and the claimant did obtain employment as a cab driver, but at only a fraction of his former earnings.
Similarly, in Adams, supra, the record showed that the claimant had medical restrictions, was blind in one eye, and had only a third grade education. His employer found several job offerings for the claimant within his range of limitations, but he refused to consider any of them. The court of appeal found that it was error for the hearing officer to determine that the claimant was entitled to supplemental earning benefits based upon zero earning, i.e., based on the assumption that the claimant was not capable of earning anything.
This is not a question of the hearing officer's prerogative as the fact finder to weigh the conflicting testimony of medical experts. The only medical testimony in support of Smith's position was that of Dr. Brunet, who did not see the claimant after January 27, 1994 and who deferred to Dr. Linder. Even if we accept everything Dr. Brunet says as true for purposes of argument it is insufficient to permit a finding that Smith had borne his burden of proving "by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident" as required by the Supreme Court in Smith, 633 So.2d at 132. Smith was placed under no medical restrictions by Dr. Brunet or any other doctor as a result of his injury for the *272 period from January 19 through June 10, 1994.
In the claim before us, Smith's case consists of only his own self-serving declaration of subjective pain supported by nothing more than the suggestion by Dr. Brunet of the mere possibility (not probability) of pain limited to situations involving kneeling or full knee bending in tight blue jeans. Smith offered no evidence of any impediments to employment such as limitations or deficiencies in his education, skills, job experience, training, mental capacity, or physical capacity other than pain in his knee. Under the facts of this case, Smith cannot establish his right to Supplemental Earnings Benefits in the absence of such evidence. Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4 Cir.1993).[3] On the one hand he testified that he could do heavy lifting, but on the other said that the pain in his knee was such that he made no effort to find any kind of work. Even if this Court were to accept Smith's allegations of pain as true for purposes of argument, it would still not be sufficient to discharge his initial burden of proof as set forth above because the pain he described would have not prevented him from doing the myriad jobs that exist that do not require kneeling, crawling or doing full knee bends in tight fitting blue jeans.
As we have found that Smith failed to discharge his initial burden of proof as required, the burden never shifted to Hamp's to prove the availability of employment offering Smith the opportunity to earn wages exceeding those he was actually earning.
For the foregoing reasons the judgment below is affirmed to the extent that it awarded Smith an additional week of temporary total disability benefits. To the extent that the judgment below awarded Smith Supplemental Earnings Benefits it is reversed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] The Supreme Court in Smith made clear exactly what this burden of proof is by way of example:

It was stipulated by the parties that plaintiff's average monthly wage was $1334.72. [Footnote omitted.] Therefore, in order to be entitled to supplemental earnings benefits, plaintiff had to prove by a preponderance of the evidence that he was unable to earn $1,201.25 a month, 90% of his average monthly pre-injury wage.
[2] This is a reference to the fact that Smith testified that the work at that job site was scheduled to be complete within two or three weeks after Smith was laid off.
[3] This Court held in Schmitt, 632 So.2d at 374:

The only remaining [issue] is supplemental earnings benefits.
In order to establish entitlement to these benefits, a claimant must show that because of his injury, he is no longer able to earn wages equal to ninety per cent or more of the wages earned prior to injury. Since the record contains no testimony concerning the appellee's educational level, previous training, or work experience, we are unable to determine if he might be entitled to Supplemental Earnings Benefits (SEB) under La. 23:1221(3). [Emphasis added.]
Since the appellee made no prima facie case of entitlement to permanent total, or supplemental earnings benefits, the trial court erred in ordering the City to continue to pay appellee weekly benefits.