| iBARRY, Judge.
The City of New Orleans appeals a judgment in favor of Karl Pfister, awarding him supplemental earnings benefits (SEB), medical expenses, attorney’s fees of $5,000 and a 12% penalty on outstanding sums, legal interest and costs. Pfister answers the appeal and requests the costs, attorney’s fees, penalties and interest relating to the City’s appeal.
Pfister was employed as a fire inspector from July 9, 1967 to July 23, 1993. Pfister claimed worker’s compensation benefits under the Firefighters Heart and Lung Statute, La.R.S. 33:2581. According to Rosenbush Claims Service representative, Richard Pa-tin, no compensation or medical benefits *428 were paid to Pfister because the question of whether he was covered under that statute was referred to the City Attorney’s Office, which never responded. Pfister was never formally denied benefits, but none were paid. Pfister filed a claim against the City of New Orleans and the hearing officer found that Pfister suffered a compensable heart condition related to his work as a fire inspector.
The City argues that the hearing officer erred by:
|⅞1) applying La.R.S. 33:2581 to a fire inspector;
2) finding that Pfister met the statute’s minimal burden;
3) finding that Pfister was entitled to SEB when he had retired from the Fire Department; and
4) finding it arbitrary and capricious.

TESTIMONY

Karl Pfister testified that he was born November 15, 1942 and finished high school. He went to work for the Fire Department in July, 1967 and was trained in arson investigation. He worked a forty hour week but additionally was on standby for forty-eight hours at a time and had to respond immediately when he was called. Sometimes he received two to three calls a night, but then had to work the next morning. He handled the overall investigation of burned buildings and generally arrived right after the fire was put out or when it was smoldering. He had to climb stairs and ladders, remove furniture and burned debris, and cut out sections of flooring.
Pfister stated that he responded to a fire at 3650 Alva in the Desire Housing on July 23,1993. There was a lot of smoke and heat in the building. He experienced shortness of breath and chest pains as he went upstairs. His partner, Harry Mendoza, convinced him to go and sit in the air-conditioned car. His partner finished the investigation and they left. The pain persisted for a couple of days but he continued working. He was on his way to lunch with Mendoza when he experienced pain and the doctor recommended that he go to Touro Hospital. Dr. Pinner told Pfister not to do heavy exertion, lift or climb stairs. He could no longer do his job. Pfis-ter said that he tried to get another job, he looked in the paper, and made calls. He agreed when asked whether he was unable to make 90% of his former salary. He said that he never intended to retire or withdraw 13from the work force. Pfister testified that he was receiving a disability pension from the Fire Department. On cross examination the City focused on Touro notes of July 27, 1993 which indicated that Pfister experienced lightheadedness for several weeks and had blacked out about two weeks before. Pfister agreed that he had experienced those symptoms and admitted that his mother had angina.
Wilmont Miller, a 20 year veteran firefighter who saw Pfister at 15 or 16 fires over a five year period and observed fire inspectors at work, testified that Pfister was exposed to smoke and fumes during his investigations. A fire was often still smoldering or part of another part of the building was still burning when Pfister began his work. He had to move refrigerators or stoves, cut up floors, remove walls, and move debris. Miller saw fire inspectors crawl up underneath a fallen roof and set it outside the building. According to Miller, Pfister and fire inspectors “do almost firefighting work except they don’t have the hose.”
Dr. Pinner, a cardiologist and Pfister’s treating physician who first saw him at the hospital on July 27, 1993, testified that Pfister, a non-smoker, had a five day history of chest tightness and exertional dyspnea and a several week history of lightheadedness with one blackout two weeks before. Pfister’s diagnosis was a third degree AV block and he underwent placement of a dual chamber pacemaker. A cardiac catheterization revealed significant single vessel coronary artery disease involving the right coronary artery with a 75% blockage or stenosis. Pfister was hospitalized from July 27 through July 31, 1993. His other medical problems include hypertension, hyperlipidemia (fats in the blood stream), and adhesive capsulitis (frozen shoulder) involving the left shoulder. Dr. Pinner told Pfister to avoid stress, exertional activity, and heavy lifting. He could not be exposed to smoke or climb *429 stairs as he had done in his job as a fire inspector. ^Pfister could do light, clerical, sedentary work without stress. Dr. Pinner requested limited duties for Pfister, but he was sent home because he was unable to fulfill his full work duties.
Dr. Pinner stated that it was “certainly possible” that Pfister’s career in the fire department contributed to his coronary artery disease. He declared that there was a link between the stress of Pfister’s occupation and that heart problem. He found no relationship between Pfister’s work and the syncope or conduction disease; the AV block and the necessity of implanting the pacemaker was not related to his choice of profession.
Dr. Ruli, the physician who has treated firefighters from 1956, reviewed Dr. Pinner’s report and stated that Pfister should not work as a fire inspector. Dr. Ruli noted that Pfister was a fire inspector, not a firefighter, but declared that inspectors go to fires and climb stairs. They are exposed to smoke and heat even though their duties may not be quite as strenuous as those of the firemen. Dr. Ruli stated that Pfister’s job as a fire inspector did not cause his medical condition, but it certainly could be an aggravating factor. The degree of aggravation would depend on how often Pfister was exposed to smoke and fires and had to get up in the middle of the night to go out for inspections at fires.
According to Dr. Ruli, Pfister should do clerical work, ordinary office work. He should avoid any jobs that require climbing, heavy lifting, or any activity that would subject him to unusual physical or emotional stress. In a November 23, 1993 letter to Chief McDaniels, Dr. Ruli recommended that Pfister be considered totally and permanently disabled from engaging in his duties as a fire inspector.
|5The City submitted into evidence the job description of a fire prevention inspector which included “investigational work to determine the origins and causes of fires; and related work as required.” An inspector was responsible for “responding to and investigating suspicious fires, fatal fires, and major alarm fires.”

THE HEART AND LUNG STATUTE

Pfister contends that his heart condition is covered by La.R.S. 33:2581, which provides:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
Pfister notes that the statute applies to a heart disease which develops in those employed in the classified fire service, not only in firefighters. He contends that fire prevention inspection is clearly part of the classified fire service and quotes the constitutional provisions which set up classified and unclassified service in the municipalities of the state. Pfister argues that he worked from 1967 to 1993 for the Fire Department before developing heart problems and is entitled to benefits under the Heart and Lung Statute.
The City never argues that Pfister is not in the classified fire service, but contends that La.R.S. 33:2581 provides a statutory presumption for heart disease |6suffered by firefighters only. It contends that fire inspectors’ jobs are not as strenuous and should not be afforded the presumption.
The statute does not limit its coverage to the heart diseases of firemen or firefighters although such a provision could have been included in the statute’s language. Fire inspectors are continually exposed to smoke and heat as they have to climb stairs and *430 ladders while fires are still smoldering. Pfis-ter worked in that capacity for 26 years. The hearing officer correctly concluded that Pfister, a fire inspector, was in the classified fire service and La.R.S. 33:2581 applied to his heart condition.

STANDARD OF REVIEW AND BURDEN OF PROOF

In worker’s compensation cases as in other cases, an appellate court’s review is governed by the clearly wrong or manifestly erroneous standard. This Court must determine whether the factfinder’s conclusion was a reasonable one after reading the entire record. Freeman v. Poulan/Weed Eater, 95-1530 (La.1/14/94), 630 So.2d 733; Miller v. City of New Orleans, 95-1005 (La.App. 4 Cir. 12/14/95), 665 So.2d 1293. Although it is not part of the Worker’s Compensation Act, La. R.S. 33:2581 is applicable to worker’s compensation cases. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991).
The City argues that Pfister faded to carry the employee’s minimal burden of proof under La.R.S. 33:2581. However, the Heart and Lung Statute effectively shifts the burden of proof to the employer who must prove the lack of causation between the disease and the employment. “[U]nless affirmative proof is adduced to prove a lack of causation ... the presumption requires that the disabled fireman be entitled to coverage under the Act.” McCoy v. City of Shreveport Fire Department, 26,181 (La.App. 2 Cir. 1/25/95), 649 So.2d 103, 108, quoting Vincent v. City of New Orleans, 326 So.2d 401, 403 (La.App. 4th Cir.1975)(on rehearing), writ denied 329 So.2d 760 (La.1976). The presumption is almost impossible to rebut. The City is put in the difficult position of proving a negative, that the firefighter’s heart disease could not have resulted from his work. Vincent, 326 So.2d at 405.
While each case must be determined on its peculiar facts, it has been acknowledged by the legislature that a firefighter because of the strain and stress of his job is predisposed to heart problems and is entitled to the benefit of the statutory rebuttable presumption. The City must prove that fire service “did not precipitate, accelerate, aggravate, or otherwise cause or contribute to” the heart condition. Rothell v. City of Shreveport, 626 So.2d 763, 767 (La.App. 2d Cir.1993)(clerical error corrected on rehearing), writ denied 93-3191 (La.2/11/94), 634 So.2d 379.
Dr. Pinner stated that there was link between Pfister’s work for the fire department and his coronary artery disease. It was certainly possible that his occupation contributed to that heart disease. Dr. Ruli testified that Pfister’s work as a fire inspector did not cause his medical condition, but it was an aggravating factor. There was clear medical testimony that the fire inspector’s work contributed to or aggravated his coronary heart disease. The hearing officer correctly ruled that the City failed to show that Pfister’s heart problems were in no way connected to his work. The City failed to overcome the presumption of La.R.S. 33:2581 and Pfister is entitled to compensation benefits.

SUPPLEMENTAL EARNINGS BENEFITS

The City argues that the hearing officer erroneously awarded SEB. La.R.S. 23:1221 (in 1993 and today) provides in pertinent part:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis.
The worker’s compensation law is to be liberally construed in favor of coverage; the claimant has the initial burden of showing that the heart condition results in his *431 inability to earn at least 90% of his former wages. Herty v. City of New Orleans, 94-1960 (La.App. 4 Cir. 4/13/95), 654 So.2d 785. Once the claimant’s burden is met, the burden shifts to the employer to show that the claimant is physically able to perform a certain job and that job was offered to claimant or was available in the community or geographic location. Id. See also Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129. The amount of SEB is based on the difference between the average weekly wage before the injury and the claimant’s earning capacity after the injury. Freeman, 630 So.2d at 739.
According to cheek stubs as a fire inspector Pfister was earning $1,351.07 gross pay every two-weeks. He had only a high school education and had worked for the Fire Department from 1967 to 1993. Pfister had attended schools during Rthose years for training in arson investigation. Because of his heart problems, he could only do sedentary office or clerical work for which he was not trained. Pfister testified that he looked in the classified ads, went to a number of places and made phone calls without success. He stated that he was not able to earn 90% of his salary as a fire inspector. The hearing officer did not manifestly err by awarding supplemental earnings benefits.

OFFSET

The City argues that the hearing officer erroneously failed to find that Pfister had retired and was no longer entitled to those benefits. The City also complains that it is entitled to an offset for Pfister’s disability retirement benefits or that the matter should be remanded for a determination as to retirement.
La.R.S. 23:1221(3)(d)(iii) provides that supplemental benefits earnings shall not exceed the maximum of 520 weeks but shall terminate “[w]hen the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.” According to its liberal interpretation appropriate for the Worker’s Compensation Act, the Louisiana Supreme Court has held that a worker retires when he withdraws from the work force or draws old age social security benefits, whichever comes first. Allen v. City of Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123.
La.R.S. 23:1225(0(1) provides:
If an employee receives remuneration from:
(a) Benefits under the Louisiana Worker’s Compensation Law.
lio(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker’s compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an- agreement to the contrary between the employee and the employer liable for payment of the worker’s compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage.
A credit is allowed for benefits received under a disability plan in the proportion funded by the employer, but there is no mention of a credit for tenure-based retirement benefits. La.R.S. 23:1225(C) constitutes a restriction on an injured employee’s compensation benefits and must be strictly construed. Tenure-based retirement benefits (after 20 years of service according to La.R.S. 11:3381) do not reduce compensation benefits under La.R.S. 23:1225. If at the time of the disabling incident the fireman’s right to retirement benefits had fully vested but he chose to take disability pension, there is no detriment to the Fund if he transferred from one to the other. La.R.S. 23:1225(0 is inapplicable to a disabled employee who is eligible for retirement with the same amount of benefits under both the tenure-based and disability benefit plan. Cousins v. City of *432 New Orleans, 608 So.2d 978 (La.1992).[1] See also McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991); Domingue v. Hartford Insurance Company, 568 So.2d 221 (La.App. 3rd Cir.1990), writ denied 571 So.2d 654 (La.1990).
| nPSster testified that he was receiving disability retirement benefits, but no evidence was submitted to show receipt of disability benefits, the amount being paid, or the proportion funded by the City. Pfister, who had worked for the Fire Department for well over twenty years, was apparently also entitled to tenure-based retirement. The hearing officer made no clear finding as to whether Pfister had “retired” under Allen.
In Carter v. New Orleans Fire Department, 94-3072 (La.2/17/95), 650 So.2d 238, an injured fireman was receiving disability benefits. The hearing officer awarded SEB and this Court held that the fireman had retired and was entitled to only 104 weeks of SEB under La.R.S. 23:1221(3)(d)(iii). The Louisiana Supreme Court granted the application and remanded the matter to the Office of Worker’s Compensation for further proceedings to determine whether the fireman had retired as the term was defined in Allen, 637 So.2d at 123.
This matter was heard the year Allen was handed down. It is appropriate that both sides be afforded an opportunity to present evidence on the issue of Pfister’s retirement and a possible credit or offset. We therefore remand this matter for further proceedings limited to that issue.

ATTORNEY’S FEES AND PENALTIES

The City argues that the hearing officer erred by finding that it was arbitrary and capricious and awarding attorney’s fees under La.R.S. 23:1201.2 and penalties under La.R.S. 23:1201(E).
Under La.R.S. 23:1201 penalties are assessed against the employer or the insurer unless the employee’s claim was reasonably controverted. Reed v. Direct Installers, 95-1684 (La.App. 4 Cir. 1/31/95), 669 So.2d 529. A claim is reasonably controverted if the employer or insurer had a reasonable basis for |12believing that compensation benefits and medical expenses were not due. Schmitt v. City of New Orleans, 632 So.2d 367 (La.App. 4th Cir.1993). Under La.R.S. 23:1201.2, payment of attorney’s fees is appropriate when the employer acted arbitrarily, capriciously or without probable cause.
Pfister had worked as a fire inspector from 1967 to 1993 and then suffered heart problems. Rosenbush Claims Service paid no medical bills and made no compensation payments, but never officially denied Pfister’s claim because the City Attorney’s Office never replied to its legal inquiry. Pfister’s claim was ignored and he received no help.
Under the circumstances the hearing officer did not err by awarding penalties and attorney’s fees.

ANSWER TO APPEAL

Pfister answers the appeal and requests costs and attorney’s fees for the frivolous appeal.
Damages for a frivolous appeal are appropriate when it is clear that the appeal was taken solely for the purpose of delay or when it is evident that counsel does not seriously advocate the client’s position. Succession of Lane, 95-0558 (La.App. 4 Cir. 9/28/95), 662 So.2d 82, writ denied 95-2510 (La.12/15/95), 664 So.2d 440; West v. Collins, 94-0682 (La.App. 4 Cir. 12/28/94), 648 So.2d 500. There is no basis to make that award in this appeal.
However, under La.R.S. 23:632 Pfister, who was awarded attorney’s fees by the trial court and successfully defended on appeal, is entitled to $1,500 attorney’s fees for the appeal. See Sam v. Jhane Home Health Care Services, Inc., 95-0081 (La.App. 4 Cir. 6/7/95), 657 So.2d 559.
I isThe judgment is affirmed in part and is remanded for further proceedings only on the issue of whether Pfister retired.

*433
AFFIRMED IN PART; REMANDED IN PART; APPELLATE ATTORNEY’S FEES GRANTED.

. In Cousins, 608 So.2d at 978, the injured fireman opted to receive a pension from the disability benefits plan (for tax reasons) although he was eligible to receive the same amount of benefits for retirement after twenty years of service.