| .EDWARDS, Judge.
Claimant Armond Degeorge was injured in the course and scope of his employment with Burmaster Tractor and Truck Service (“Burmaster”) on August 2, 1991, when the truck he was driving was struck by another vehicle. The employer had worker’s compensation insurance coverage with Insurance Company of North America (“INA”). Weekly indemnity payments were made to Mr. Degeorge, along with medical benefits.
In 1997, INA filed a proceeding with the Office of Worker’s Compensation, alleging that Mr. Degeorge refused to undergo a functional capacity evaluation (FCE) as recommended by two orthopedic specialists who had examined him. In turn, Mr. Degeorge filed a claim requesting payment of treatment by his choice of physician and requesting modification of a judgment [¡¡awarding an offset under La. R.S. 23:1225. He further alleged continuing disability.
The matters were consolidated for trial.
At trial, Mr. Degeorge testified that following the accident he was treated by Dr. Aiken for his back until 1993, when the doctor retired. Later, the insurance company sent him to Dr. Labadie, who hurt him during the examination. He told his attorney that he could hardly move without his medication, and this was told to the insurance company which wanted him to undergo an FCE.
After telling his counsel that he couldn’t find another physician to treat his back, he was referred to Dr. Rawls, a family practitioner and has had to pay that physician as well as pay for his own prescriptions. He received two checks from the insurer, one for $679.36, for services from 12/14/95 to 4/8/97; and one for $1376.00, for services from 6/30/94-4/8/97. No explanations of the services were attached to the checks.
After the court ruled that the insurer was entitled to an offset for Social Security benefits, Mr. Degeorge advised Social Security that his compensation payments had been reduced. However, his federal benefits did not increase. Prior to the offset, he was getting $218.70 per week; it was cut to $55.33, then changed to $110.65. Claimant did not know if Dr. Rawls was sending his bills to the insurer.
Mr. Degeorge was examined by Dr. Bruce Razza, an orthopedist, at the request of his attorney. His deposition was admitted at trial. Dr. Razza testified that an MRI of claimant’s cervical spine revealed a left lateral disc herniation. An MRI and a CAT scan of the lumbar spine demonstrated degenerative narrowing of lumbosacral discs and a herniation at the L5-S1 level. Dr. Razza recommended additional testing with E.M.G.’s for the left arm and right leg. Those tests were normal. Dr. Razza | recommended conservative treatment, including physical therapy, along with the medication claimant was already taking.
Dr. Claude Williams, an orthopedist, examined Mr. Degeorge on behalf of INA. His deposition was also admitted at trial. Dr. Williams found that the claimant sus *976 tained both a lumbar and a cervical strain from the accident which were superimposed over existing degenerative changes. Conservative treatment was recommended, along with an FCE. Dr. Williams assigned a 15% whole body disability and opined that the symptoms originated from the accident.
Maryann Doussard, a registered nurse employed by Intercore, a priváte disability management firm, testified that in June of 1994, she arranged an appointment for Mr. Degeorge with neurologist, Dr. Truax. In August of 1994, at the choice and request of INA, claimant was scheduled to see Dr. Laborde, an orthopedist, for a second opinion. Claimant’s counsel refused to permit the examination, and nothing more was done by Ms. Doussard. In January of 1997, she made an appointment for claimant to see Dr. Claude Williams. Dr. Williams was INA’s choice for an independent medical examiner and had not been chosen by the court. At that time, an FCE was set up for April 15, 1997. Mr. Degeorge did not attend the FCE, and the witness did not, attempt to reschedule the examination. Mr. Mitchell from Reliability sent her a letter stating that he had tried to contact claimant’s counsel to reschedule the FCE, and that Mr. Degeorge would not stop taking his medication in order to take the evaluation testing.
I ¡¡Dr. Russell Rawls testified that he first saw claimant in May, 1994, at which time he complained of pain in his back, radiating to his leg and neck and down his left arm. The onset of the problems was the accident in question. At the time, Mr. Degeorge needed a general medical doctor since he had not had surgery. The doctor had a copy of an MRI of the lumbar spine done in June, 1995, another one of the thoracic spine, a CT scan of the cervical spine from May, 1993, an evaluation done by Dr. Bruce Razza, and a report from Dr. Aiken.
Dr. Rawls has given claimant conservative symptomatic treatment. He knew that this was a worker’s compensation claim, but he was not involved in the billing in his office and did not know who paid part of the claimant’s bill. The doctor prescribes analgesics to treat pain and tranquilizers to help handle the stress of the injury. He knows that Mr. Degeorge is reluctant to undergo surgery.
On cross-examination, Dr. Rawls did not know if his office attempted to contact the comp insurer when Mr. Degeorge began treatment. Dr. Rawls stated that he tried claimant on non-steroidal anti-inflammatory medicines. However, given his refusal to have surgery, the only choice he has is medication for pain. While pain management, followed by an FCE could be attempted, the doctor was not sure that these things would help in this particular case.
Numerous exhibits were filed into the record, including the deposition of Angie Villalon, claims adjuster for INA, infra.
At the conclusion of trial, the court found that the treatment by Dr. Rawls was reasonable and necessary, and that Mr. Degeorge is entitled to payment of all medical bills and medication expenses arising from the accident. The Court |fialso ruled that defendant should submit to the FCE in conformity with the orders of Dr. Razza and should undergo the recommended diagnostic studies and physical therapy prescribed by Dr. Razza; that there have been material changes in circumstances warranting modification of the judgment rendered on March 7, 1997, and that the employer/insurer is entitled to the social security offset under La. R.S. 23:1225(A); and that Burmaster and its insurer were not arbitrary and capricious. Burmaster and INA aver on appeal that it was error for the trial court to order payment of Dr. Rawls’ treatment. By this assignment of error, INA contends that under La. R.S. 23:1142(B), the claimant and his physician must obtain pre-approval for treatment or subject themselves to a $750.00 cap on non-emergency care. It is also averred that the treatment by Dr. *977 Rawls was neither reasonable nor necessary. According to INA, the issue of Dr. Rawls treatment did not come up until July of 1997, when Ms. Villalon was presented with bills for payment.
With regard to the necessity of pre-approval, R.S. 23:1142(B) states:
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemer-gency diagnostic testing or-treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
In her deposition, Ms. Villalon stated that the first request received by INA for payment to Dr. Rawls was on June 27, 1995. At that time, the request was made by counsel for claimant, asking for a second opinion as an “IME” relative to surgery. The request was not approved at that time. However, on July 11, |71997, based on a fax sent by the doctor’s office, Dr. Rawls was paid $1,029.00 for medical services from January 26, 1996 through April 8, 1997. On July 21, claimant received a payment of $1376.00 “for services” from June 6, 1994 through April 8, 1997. The latter check does not disclose whose or which services are covered therein. There is nothing in writing declining approval of Dr. Rawls as treating physician. Ms. Villalon did not dispute Dr. Rawls’ bill; rather, INA refused to pay for an evaluation in which Dr. Rawls, who is not an orthopedist or a neurosurgeon, addressed surgery. The record on appeal also shows a letter to Mr. Degeorge’s counsel dated January 22, 1997 from Sheryl Story, counsel for INA, which contains the following statement:
The carrier has been quite generous and patient with Mr. Degeorge’s choice of physicians, in allowing him to change from Dr. Aiken to Dr. Razza, and then to Dr. Rawls.
Considering all of the above, we find that ÍNA did consent to the treatment by Dr. Rawls. As a result, the limitations of R.S. 23:1142(B) are inapplicable to the present case. See Johnson v. Chateau Living Center, 94-989 (La.App. 5th Cir. 4/25/95), 653 So.2d 1367, wherein this court refused to limit payment of bills to $750.00 when medical bills were submitted and paid by the employer and, although the employer changed its mind about payment of these medical treatments, it did not so notify the physician.
In addition, we note that R.S. 23:1121(B)[1] permits the employee to change to a treating physician in another field without the permission of the employer.
 Dr. Rawls provided claimant with conservative symptomatic treatment, Drs. Williams and Razza also recommended such treatment.' The fact that Mr. De-george did not submit to an FCE does not lessen his need for treatment of his symptoms. We therefore find the treatment by Dr. Rawls was both reasonable and necessary. Under all these facts, we have determined that the court was not manifestly erroneous in finding that treatment by that physician was reasonable and neces *978 sary, and in further ordering payment of those medical bills.
We further agree that the trial court retains jurisdiction to make such modifications to its judgment as it did in this case. The court cited R.S. 28:1310.8, which states that the power and jurisdiction of the workers’ compensation judge over each case shall be continuing and he may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified. Here, the employer applied for an offset under R.S. 23:1225(A). However, the trial court mistakenly granted the offset under 1225(C). In the present proceedings, the court apparently corrected a typographical error. It retains jurisdiction to make this correction under La.Code Civ. P. art. 1951. Bur-master neither avers that it is entitled to the offset under 1225(C), nor that the modification in any way affects the substance of the judgment, nor do we find the substance of the judgment to be altered. As such, the circumstances of the present case are distinguishable from Starnes v. Asplundh Tree Expert Company, 94-1647 (La.App. 1st Cir.1995), 670 So.2d 1242, cited by INA, wherein the court added awards for medical expenses and mileage reimbursement to its original compensation judgment. Accordingly, this assignment of error is without merit.
l9La. R.S. 23:1201 provides for the assessment of penalties for failure to pay medical benefits within sixty days after the employer or insurer receives written notice thereof. Under section (F), failure to provide such payment results in the assessment of a penalty in an amount equal to twelve percent of any unpaid medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all medical benefits remain unpaid. This penalty is in addition to reasonable attorney fees for each disputed claim, with a maximum aggregate of two thousand dollars. This Subsection does not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
The employee’s right to receive compensation benefits and payment for medical expenses will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that compensation and medical expenses were not due. Herty v. City of New Orleans, 94-1960 (La.App. 4th Cir. 4/13/95), 654 So.2d 785. As stated above, in the present case Dr. Rawls had been approved by the insurer as the treating physician. The fact that Mr. Degeorge did not present himself for a functional capacity evaluation as recommended by Dr. Williams does not constitute a basis for failure to pay medical expenses of the treating physician. Dr. Williams did not recommend that Mr. De-george return to work and did assess a 15% whole body disability. While there is evidence that the claimant would benefit from an FCE, there is no medical evidence whatsoever that the claimant did not need the medical treatment given by Dr. Rawls. Accordingly, INA is liable to Mr. De-george for payment of penalties and attorney fees on all unpaid medical expenses relative to Dr. Rawls.
Imlt is not clear from the record which bills concerning Dr. Rawls’ treatment have remained unpaid for 60 days or more. Therefore it is appropriate to remand the case for determination of the appropriate amount of penalties due under R.S. 23:1201, as well as for determination of attorney fees under that statute.
For the foregoing reasons, the judgment is affirmed in part. The portion of the judgment which finds that INA and Bur-master were not arbitrary and capricious is set aside, and the matter is remanded for a determination of penalties and attorney fees due in accordance with this opinion. Costs of this appeal are assessed to Burmaster and INA.
*979 AFFIRMED IN PART; SET ASIDE IN PART; REMANDED.

. LSA R.S. 23:1121(B) states in pertinent part:
The employee shall have the right to select one treating physician in any field or specialty.... After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.